[No. B217102. Second Dist., Div. Three. Mar. 3, 2010.]

In re FREDDY MILLE on Habeas Corpus.

## COUNSEL

Michael P. Judge, Public Defender, Colleen Chikahisa and John Hamilton Scott, Deputy Public Defenders, for Petitioner Freddy Mille.

Edmund G. Brown, Jr., Attorney General, Douglas Press, Assistant Attorney General, Richard T. Waldow, Leslie P. McElroy, Jennifer M. Kim, Randall R. Murphy and Ernest Martinez, Deputy Attorneys General, for Respondent State of California.

## OPINION

**KLEIN, P. J.**—Petitioner Freddy Mille (Mille) seeks a writ of habeas corpus, challenging the 84-day delay in transferring him from the Los Angeles County Jail (county jail) to Patton State Hospital (Patton), in neighboring San Bernardino County, after the superior court ordered the Los Angeles County Sheriff (sheriff) to transport Mille from the county jail to Patton for evaluation and treatment. (Pen. Code, § 1370.)[1]

Once a trial court finds a defendant mentally incompetent to stand trial and orders the defendant committed to a state mental hospital for care and treatment to restore competence to stand trial, *the state mental hospital has 90 days to make a written report to the court* concerning the defendant's progress toward recovery of mental competence. (§ 1370, subd. (b)(1).)

A "person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial *cannot be held more than the reasonable period of time* necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." (*Jackson v. Indiana* (1972) 406 U.S. 715, 738 [32 L.Ed.2d 435, 92 S.Ct. 1845], italics added (*Jackson*); accord, *In re Davis* (1973) 8 Cal.3d 798, 801 [106 Cal.Rptr. 178, 505 P.2d 1018] (*Davis*).)

 Here, following the commitment order, Mille was kept in the county jail for 84 days before the sheriff transferred him to Patton for evaluation and

---

[1] All statutory references are to the Penal Code, unless otherwise specified.

treatment. The fact the county jail administered antipsychotic medication to Mille while he was housed there, pursuant to section 1369.1, was not a substitute for a timely transfer to Patton for evaluation and treatment to restore Mille's competence to stand trial.

The sheriff's failure to transfer Mille was first called to the attention of the trial court 30 days after the commitment order, when the public defender filed the initial petition for writ of habeas corpus challenging Mille's prolonged confinement in the county jail. We conclude, minimally, instead of denying Mille's initial petition for writ of habeas corpus, filed June 3, 2009, the trial court should have ordered the sheriff to deliver Mille promptly to Patton for evaluation and treatment. (*In re Stoliker* (1957) 49 Cal.2d 75, 78 [315 P.2d 12] [habeas corpus is proper remedy to secure confinement under proper authority].) Likewise, on the facts presented, this court should have granted the habeas corpus petition which Mille filed in this court on June 26, 2009, and directed Mille's immediate transfer to Patton.

Mille is no longer in the custody of the county jail or the sheriff, having been transferred eventually to Patton for examination and treatment pursuant to section 1370. Therefore, he has received the relief he requested in the petition for writ of habeas corpus which he filed in this court, rendering said request for a writ of habeas corpus moot. (*In re Walters* (1975) 15 Cal.3d 738, 743 [126 Cal.Rptr. 239, 543 P.2d 607].)

 Nonetheless, "[w]here questions of general public concern are involved, particularly in the area of the supervision of the administration of criminal justice, we may reject mootness as a bar to a decision on the merits. [Citations.] Furthermore, habeas corpus is an appropriate procedure for disposing of the present case since it can be used by petitioner to obtain a declaration of rights in the prevailing circumstances. [Citations.]" (*In re Walters, supra*, 15 Cal.3d at p. 744, fn. omitted.) While the questions presented herein are likely to recur, each case could become moot before we could have acted upon it. Consequently, we consider Mille's case an appropriate vehicle for addressing the issues presented herein. (*Ibid.*)

## FACTUAL AND PROCEDURAL BACKGROUND

The felony complaint, filed March 16, 2009, consisted of one count of attempted kidnapping of a victim under the age of 14 with an allegation of a prior conviction of burglary.

On April 20, 2009, prior to the preliminary hearing, defense counsel declared a doubt as to Mille's competence. (§ 1368, subd. (b).)

On May 4, 2009, following a hearing, the trial court found Mille mentally incompetent to stand trial and ordered him committed to the State Department of Mental Health (the Department) for placement at Patton. (§ 1370.) The trial court remanded Mille to the custody of the sheriff for transportation to Patton. The trial court did not specify a date by which that was to occur.

On June 3, 2009, 30 days having elapsed since the commitment order, Mille, represented by the public defender, filed a petition in the superior court for writ of habeas corpus. Mille alleged he was being unlawfully confined in the county jail for a "statutorily and constitutionally impermissible length of time" following his commitment. The petition alleged Mille was receiving "no treatment beyond, possibly, medication, and that no examination is being made to determine whether it is substantially likely that [he] will regain competence in the foreseeable future." The petition asserted Mille "is being deprived of the right to prompt treatment in the facility to which [he] had been committed, and the right to an immediate examination to determine the likelihood of [his] future recovery."

On June 22, 2009, the superior court issued an order denying the petition without prejudice. The superior court stated: "Although it is regrettable that Petitioner has to spend any time in the County Jail without treatment after being committed as incompetent to stand trial, the court is mindful that it takes time to arrange admission and effectuate transportation to Patton State Hospital, which is located in another county some distance from the City of Los Angeles. It has been barely one month since commitment. Under the circumstances, the court does not believe that a one-month delay violates the Constitution of the State of California or the United States of America."[2]

On June 26, 2009, Mille filed a petition for writ of habeas corpus in this court, reiterating the grounds he asserted in his initial petition in the superior court.

On July 9, 2009, this court summarily denied the petition without prejudice.

On July 10, 2009, Mille filed a petition for review in the California Supreme Court.

The California Supreme Court requested the state Attorney General to answer the petition on or before July 27, 2009. On July 27, 2009, the sheriff

---

[2] The trial court's observation "it has been barely one month since commitment" was erroneous. As of June 22, 2009, the date the trial court ruled on the habeas corpus petition filed June 3, 2009, 49 days of the 90-day period (§ 1370, subd. (b)(1)) had expired.

transported Mille to Patton. That same day, the Attorney General filed an answer to the petition for review as well as a motion to dismiss the petition for review as moot.

On August 12, 2009, the Supreme Court denied the motion to dismiss the petition for review as moot. It granted the petition for review and transferred the matter back to this court with directions to vacate the July 9, 2009 order summarily denying habeas corpus relief and to issue an order to show cause returnable in this court. The Supreme Court's order stated: "The Director of the Department of Mental Health is to be ordered to show cause, when the matter is placed on calendar, why petitioner's prolonged detention in the Los Angeles County Jail after the superior court ordered his commitment to Patton State Hospital did not deny him due process of law. (See *Jackson v. Indiana*[, *supra*,] 406 U.S. 715, 738; *In re Davis*[, *supra*,] 8 Cal.3d 798, 801.)"

In compliance, we vacated our prior order and issued an order to show cause.

## CONTENTIONS

Mille contends: he is unlawfully confined because he has been held for a prolonged period of time absent appropriate treatment to restore competence to stand trial and because no immediate examination is being made to determine his probability of recovering competence; and should this matter become moot, this court should reject mootness as a bar to decision.

The Department avers: Mille was not denied due process on account of his confinement at the county jail's psychiatric unit because the county jail is a designated treatment facility pursuant to section 1369.1 and Mille was receiving treatment there pursuant to section 1369.1, so that his treatment comported with constitutional requirements; Mille's due process rights were not violated because he was transferred to a state mental hospital, evaluated and treated in a timely manner; because Mille has been transferred to Patton, the order to show cause should be discharged as moot; and in any event, releasing Mille is not a proper remedy.

## DISCUSSION

1. *General principles*

 a. *Constitutional requirements: prohibition on indefinite commitment; a defendant cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability he will attain competence to stand trial in the foreseeable future; continued commitment must be justified by progress toward that goal.*

In *Jackson*, the United States Supreme Court held "a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial *cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future.* If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant. Furthermore, *even if it is determined that the defendant probably soon will be able to stand trial, his continued commitment must be justified by progress toward that goal.* In light of differing state facilities and procedures and a lack of evidence in this record, we do not think it appropriate for us to attempt to prescribe arbitrary time limits. We note, however, that petitioner Jackson has now been confined for three and one-half years on a record that sufficiently establishes the lack of a substantial probability that he will ever be able to participate fully in a trial." (*Jackson, supra,* 406 U.S. at pp. 738–739, italics added, fn. omitted.)

*Jackson* added, "of course, Jackson or the State may seek his commitment under either the general civil commitment statutes or under those for the commitment of the feebleminded." (*Jackson, supra,* 406 U.S. at p. 738, fn. 25.)

In the year following *Jackson,* the California Supreme Court in *Davis* addressed "the constitutionality of the procedures (Pen. Code, § 1367 et seq.) for the commitment to, and release from, state hospital of defendants in criminal cases who have been found to lack sufficient mental competence to stand trial." (*Davis, supra,* 8 Cal.3d at p. 801.) *Davis* concluded "Although . . . petitioners' initial commitments were proper, we acknowledge that some provision must be made to assure that petitioners do not face an indefinite commitment without regard to the likelihood that they will eventually regain their competence, for such an indefinite commitment has been held to offend constitutional principles of equal protection and due process. (*Jackson* v. *Indiana,* [*supra,*] 406 U.S. 715 . . . .) [¶] *Accordingly, we adopt*

*the rule of the Jackson case that no person charged with a criminal offense and committed to a state hospital solely on account of his incapacity to proceed to trial may be so confined more than a reasonable period of time necessary to determine whether there is a substantial likelihood that he will recover that capacity in the foreseeable future.* Unless such a showing of probable recovery is made within this period, defendant must either be released or recommitted under alternative commitment procedures." (*Davis, supra,* 8 Cal.3d at p. 801, italics added.)

Consistent with *Davis,* section 1370 was amended to ensure there is no indefinite commitment of incompetent defendants in criminal cases. Section 1370 provides at subdivision (c): "(1) At the end of three years from the date of commitment or a period of commitment equal to the maximum term of imprisonment provided by law for the most serious offense charged in the information, indictment, or misdemeanor complaint, whichever is shorter, a defendant who has not recovered mental competence shall be returned to the committing court. The court shall notify the community program director or a designee of the return and of any resulting court orders. [¶] (2) Whenever any defendant is returned to the court pursuant to paragraph (1) or (2) of subdivision (b) or paragraph (1) of this subdivision and it appears to the court that the defendant is gravely disabled, as defined in subparagraph (B) of paragraph (1) of subdivision (h) of Section 5008 of the Welfare and Institutions Code, the court shall order the conservatorship investigator of the county of commitment of the defendant to initiate conservatorship proceedings for the defendant pursuant to Chapter 3 (commencing with Section 5350) of Part 1 of Division 5 of the Welfare and Institutions Code."

The "three-year limit was added to section 1370 in 1974 when the Legislature passed Assembly Bill No. 1529, authored by Assemblyman Frank Murphy. (Parker, *California's New Scheme for the Commitment of Individuals Found Incompetent to Stand Trial* (1975) 6 Pacific L.J. 484, 489.) The purpose of the legislation was to bring the procedure for the commitment of mentally incompetent defendants in accord with the decision of the California Supreme Court in *In re Davis*[, *supra,*] 8 Cal.3d 798 . . . . (Stats. 1974, ch. 1511, § 16, p. 3323.) Before 1974, a criminal defendant found mentally incompetent to stand trial in California was committed to a state hospital until he regained competence and thus faced the possibility of an indefinite commitment without regard to the crime with which he was charged or his prognosis for recovery of competence. [Citation.]" (*In re Polk* (1999) 71 Cal.App.4th 1230, 1235 [84 Cal.Rptr.2d 389].)

b. *Pertinent statutes*

The focus of this case is not the three-year limit (§ 1370, subd. (c)(1)) but rather, a much shorter period, namely, the initial 90-day evaluation period

(§ 1370, subd. (b)(1)). We begin with an overview of pertinent provisions of the statutory scheme governing inquiry into the competence of criminal defendants to stand trial.

Section 1368, pertaining to the competence of a defendant to stand trial, states in relevant part at subdivision (b): "If counsel informs the court that he or she believes the defendant is or may be mentally incompetent, the court shall order that the question of the defendant's mental competence is to be determined in a hearing which is held pursuant to Sections 1368.1 and 1369."

Section 1370 provides: "(a)(1)(A) If the defendant is found mentally competent, the criminal process shall resume, the trial on the offense charged shall proceed, and judgment may be pronounced. [¶] (B) *If the defendant is found mentally incompetent, the trial or judgment shall be suspended until the person becomes mentally competent. [¶] (i) In the meantime, the court shall order that the mentally incompetent defendant be delivered by the sheriff to a state hospital for the care and treatment of the mentally disordered*, or to any other available public or private treatment facility approved by the community program director *that will promote the defendant's speedy restoration to mental competence* . . . ." (Italics added.)

Section 1370 further states at subdivision (b)(1): "*Within 90 days of a commitment made pursuant to subdivision (a), the medical director of the state hospital or other treatment facility to which the defendant is confined shall make a written report to the court* . . . *concerning the defendant's progress toward recovery of mental competence.* . . . If the defendant has not recovered mental competence, but the report discloses a substantial likelihood that the defendant will regain mental competence in the foreseeable future, the defendant shall remain in the state hospital or other treatment facility or on outpatient status. Thereafter, at six-month intervals or until the defendant becomes mentally competent, where the defendant is confined in a treatment facility, the medical director of the hospital or person in charge of the facility shall report in writing to the court and the community program director or a designee regarding the defendant's progress toward recovery of mental competence. . . . A copy of these reports shall be provided to the prosecutor and defense counsel by the court." (Italics added.)

With this constitutional and statutory framework, we turn to the case at bench.

> 2. *Mille's treatment in the county jail with antipsychotic medication was not a substitute for timely transfer to Patton for examination and treatment.*

█ The statutory scheme requires the mentally incompetent defendant to be delivered by the sheriff to the state hospital for treatment "that will

promote the defendant's speedy restoration to mental competence . . . ." (§ 1370, subd. (a)(1)(B)(i).) Further, "[w]ithin 90 days of a commitment . . . , the medical director of the state hospital or other treatment facility to which the defendant is confined shall make a written report to the court . . . concerning the defendant's progress toward recovery of mental competence." (§ 1370, subd. (b)(1).)

The sheriff delivered Mille to Patton on July 27, 2009, 84 days after the trial court ordered him committed to the Department for placement at Patton. When a defendant arrives at Patton on day 84 of the 90-day period, there is no meaningful opportunity for the defendant to make progress toward recovery of mental competence, let alone for the medical director of the hospital to make a written report to the court concerning such progress by the defendant. To reiterate, "even if it is determined that the defendant probably soon will be able to stand trial, his continued commitment must be justified by progress toward that goal." (*Jackson, supra*, 406 U.S. at p. 738.) If a mentally incompetent defendant is kept in county jail, rather than undergoing treatment in a state mental hospital, the justification for continued commitment is absent.

The Department contends Mille's lengthy confinement in county jail prior to his transfer to Patton comported with constitutional requirements because the county jail is a designated treatment facility pursuant to section 1369.1 and Mille was receiving treatment at the jail's psychiatric unit pursuant to that statute. As explained below, the Department's reliance on section 1369.1 is misplaced.

a. *Section 1369.1 and legislative intent leading to its enactment*

Section 1369.1 states in pertinent part: "(a) *As used in this chapter, for the sole purpose of administering antipsychotic medication pursuant to a court order, 'treatment facility' includes a county jail.* Upon the concurrence of the county board of supervisors, the county mental health director, and the county sheriff, the jail may be designated to provide medically approved medication to defendants found to be mentally incompetent and unable to provide informed consent due to a mental disorder, pursuant to this chapter.[3] . . . The provisions of Sections 1370 and 1370.01 shall apply to antipsychotic medications provided in a county jail, *provided, however, that the maximum period of time a defendant may be treated in a treatment facility pursuant to this section shall not exceed six months.* [¶] . . . [¶] This section does not abrogate or limit any provision of law enacted to ensure the due process rights set

---

[3] The county jail's psychiatric unit was designated a treatment facility following the enactment of section 1369.1.

forth in *Sell v. United States* (2003) 539 U.S. 166 [156 L.Ed.2d.197, 123 S.Ct. 2174].[4] [¶] This section shall remain in effect only until January 1, 2015, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2015, deletes or extends that date." (§ 1369.1, as amended by Stats. 2009, ch. 35, § 12, italics added.)

The legislative history underlying section 1369.1 sets forth the following arguments in support of the bill: "The author's office states, 'Based on an evaluation, a judge may determine a defendant is mentally incompetent to stand trial (IST) and order the defendant to be delivered to a state hospital, or other treatment facility, until they [*sic*] are mentally competent. [¶] *'It can take four to six months from the date a defendant is found to be incompetent until the date they are moved for treatment.* During this time, felony defendants usually are incarcerated in the County jail. These defendants are the most costly and difficult to manage in the jail. In their acute state they are often violent, noncompliant, a danger to themselves and seriously disruptive to other inmates and staff. Typically, they will not voluntarily take prescribed medication, thus are not making progress towards competency to participate in the criminal proceedings. When a defendant is transferred to a treatment facility or State Hospital, receives treatment, often including prescribed medication, and is restored to competency, they [*sic*] are returned to the jail, where they may refuse to voluntarily take medication, suffer remission, and repeat the cycle. [¶] *Sonoma County, and several other counties have reported that state mental hospitals have insufficient bed space to accept new patients.* While in local custody, these prisoners usually require Administrative Segregation or special housing within mental health jail modules which ties up sorely needed single cell space. In addition, the defendants usually get worse the longer they wait for admission to a Mental Health hospital. . . . [¶] *'The reality is, more and more mentally ill are being housed in jails, which by definition are not treatment facilities.* Under current law, even if the court orders involuntary medication pursuant to the Sell decision [(*Sell v. United States, supra,* 539 U.S. 166)], it cannot be done in a jail unless that jail is a licensed treatment facility.' " (Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business Analysis of Sen. Bill No. 568 (2007–2008 Reg. Sess.) as amended Aug. 27, 2007, pp. 5–6, italics added.)[5]

---

[4] *Sell v. United States, supra,* 539 U.S. 166, prescribes standards for the administration, without consent, of antipsychotic medication to a person charged with a serious crime who is incompetent to stand trial.

[5] The bill also noted, " 'The Los Angeles County Jail has been declared to be the largest mental health facility in the country, holding "more people with mental illness on any given day than any hospital in the United States." ' " (Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business Analysis of Sen. Bill No. 568 (2007–2008 Reg. Sess.) as amended Aug. 27, 2007, p. 6.)

 Thus, section 1369.1 deems the county jail a treatment facility "for the sole purpose of administering antipsychotic medication pursuant to a court order . . . ." (§ 1369.1, subd. (a).) Section 1369.1 was enacted to enable a county jail to treat a mentally incompetent defendant with antipsychotic medication on an interim basis, while the defendant is awaiting transfer to a state mental hospital or other treatment facility or after the defendant returns to jail from the treatment facility.

> b. *Pharmacological treatment in county jail pursuant to section 1369.1 is not a substitute for timely transfer to state mental hospital for treatment to restore defendant to mental competence to stand trial.*

 The Department's theory that Mille's treatment in county jail comported with constitutional requirements requires us to compare the nature of the treatment rendered in county jail against the treatment available in Patton. For the reasons set forth below, we reject the notion that treatment with antipsychotic medication in a county jail pursuant to section 1369.1 is an alternative to timely psychiatric treatment in a state mental hospital. Therefore, irrespective of the state of the public fisc, section 1369.1 cannot be used to make up for a shortage of bed space in state mental hospitals.

By way of background, according to Patton's Web site, of which we take judicial notice (Evid. Code, § 452, subd. (h)), "Patton State Hospital is currently a forensic hospital with a licensed bed capacity of 1287 for individuals who have been committed by the judicial system for treatment. Currently the hospital is fully accredited by the Joint Commission on Accreditation of HealthCare Organizations (JCAHO). . . . [¶] The hospital currently provides psychiatric care and treatment to judicially committed, mentally disordered adult individuals. The Individuals served are assigned to a living unit, which is part of one of the seven Treatment Programs. . . . Currently treatment is delivered through a centralized approach, where the Individuals served and the staff, from throughout the Hospital, come together to participate in services within Psychosocial Rehabilitation (PSR) Malls. Mall interventions are provided, as much as possible, in the context of real-life functioning and in the rhyme [*sic*] of life of the Individual. Thus, a PSR mall extends beyond the context of a building or place and its services are based on the needs of the Individual, not the needs of the program, the staff members or the institution. [¶] PSR Mall[s] are designed to insure that each Individual receives intensive and individual services to promote his/her increased wellness and ability to thrive in the world. All decisions regarding what is offered through each mall are driven by the needs of the Individuals served. Mall services are provided in an environment that is culturally sensitive and strength based. The concept of recovery shall be the guiding

princip[le] and operation framework for the mall system. [¶] *Each Individual served has a treatment team that they [sic] work with in developing the individual Wellness and Recovery Plan. The teams include a Psychiatrist, Psychologist, Social Worker, Rehabilitation Therapist, Registered Nurse, and Psychiatric Technician.*" (Italics added; <http://www.dmh.ca.gov/ services_and_programs/state_hospitals/patton/default.asp> [as of Mar. 3, 2010].)

Turning to the specifics of this case, unlike the treatment Mille received in the county jail, which treatment consisted of antispsychotic medications (§ 1369.1), the declarations and exhibits before this court reflect Mille's treatment once he arrived at Patton was both pharmacological and nonpharmacological. According to the monthly psychiatry progress report dated September 20, 2009, "*medication . . . is not the only treatment being given here at Patton. We give him supportive structured therapy including Mall Groups and group therapy, as well as educational groups and court competency and medication groups.* He is Spanish speaking, so we intend to transfer Mr. Mille to Unit 04 should the unit accept Mr. Mille since Unit 4 is a Spanish-speaking unit." (Italics added.)

In short, the limited pharmacological treatment rendered in the county jail cannot be equated with the broad spectrum of care afforded at Patton, a fully accredited state mental hospital. Accordingly, the county jail's administering of antipsychotic medication to Mille during his 84-day confinement there was not a substitute for a timely transfer to Patton, i.e., long before the expiration of the initial 90-day period.

Under the statutory scheme, Patton's medical director is required, within 90 days of the May 4, 2009 commitment order, to "*make a written report to the court . . . concerning the defendant's progress toward recovery of mental competence.*" (§ 1370, subd. (b)(1), italics added.) Therefore, a defendant needs ample time at Patton for the broad range of treatment services available there to have a positive impact on the defendant's mental competence.

Here, Mille arrived at Patton with only six days remaining of the 90-day period. Therefore, Mille had no meaningful opportunity to make progress at Patton, let alone for Patton's medical director to document his progress in a court report. Mille's prolonged detention in the county jail, with treatment limited to antipsychotic medications, was contrary to the statutory framework, which required the sheriff to deliver Mille to Patton in a timely manner for

treatment "that will promote the defendant's speedy restoration to mental competence . . . ." (§ 1370, subd. (a)(1)(B)(i).)[6]

Mille filed his initial habeas corpus petition in the superior court on June 3, 2009, 30 days after the May 4, 2009 order committing him to Patton for treatment. On June 22, 2009, the superior court denied Mille's petition. At that juncture, 49 days of the 90-day period already had elapsed. Instead of denying the petition, the superior court should have granted the petition and ordered the sheriff to deliver Mille to Patton forthwith. Upon the superior court's denial of the petition, Mille sought habeas corpus relief in this court. On July 9, 2009, this court summarily denied the petition. At that juncture, 66 days of the 90-day period had elapsed. It necessarily follows that on the facts presented, this court likewise should have ordered the sheriff to deliver Mille to Patton forthwith.

### 3. *Rule of "reasonable period of time," as applied to the 90-day time limit imposed by section 1370*

As set forth *ante*, this fact situation is governed by the basic premise, set forth by the United States Supreme Court in *Jackson* and followed by California in *Davis*, that a "person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial *cannot be held more than the reasonable period of time* necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." (*Jackson, supra*, 406 U.S. at p. 738, italics added; accord, *Davis, supra*, 8 Cal.3d at p. 801.)

What constitutes a reasonable length of time will vary with the context. Here, the discrete issue is what constitutes a reasonable time to effectuate a transfer from the county jail to a state mental hospital for evaluation and treatment, in light of the requirement that the hospital report back to the court within 90 days concerning the defendant's progress toward recovery of mental competence. (§ 1370, subd. (b)(1).)

■ "[W]e do not think it appropriate for us to attempt to prescribe arbitrary time limits" (*Jackson, supra*, 406 U.S. at p. 738) for a defendant

---

[6] We note section 1369.1, subdivision (a) provides "the maximum period of time a defendant may be treated in a treatment facility pursuant to this section *shall not exceed six months*." (Italics added.) However, section 1369.1 does not permit an incompetent defendant to be held in a county jail for up to six months, without regard to the 90-day time limit imposed by section 1370. As set forth above, within 90 days of the order committing a defendant to a state mental hospital, the hospital must provide the defendant with treatment that will promote the defendant's speedy restoration to competence, and the hospital's medical director must document the defendant's progress in a report to the court. (§ 1370, subd. (b)(1).)

who is mentally incompetent to stand trial to be transported to a state mental hospital for treatment. However, the statutory scheme requires that within 90 days of the order committing a defendant to a state mental hospital for treatment, the defendant must be delivered to the hospital, the hospital must examine the defendant and provide the defendant with treatment that will promote speedy restoration to competence, and the hospital's medical director must document the defendant's progress in a report to the court. (§ 1370.) For all of this to occur, a defendant needs sufficient time at the state mental hospital to be duly evaluated, potentially to derive some benefit from the prescribed treatment, and for such progress to be reported to the court.

Clearly, to implement section 1370, a defendant must arrive at Patton timely, not on the 84th day following the commitment order. In the case at bench, as of June 3, 2009, 30 days having expired since the May 4, 2009 commitment order, the public defender filed the initial habeas corpus petition in the superior court challenging Mille's prolonged detention in the county jail. Said habeas corpus petition called to the trial court's attention the 90-day timeframe of section 1370, subdivision (b)(1). In view of the statutory time constraint, said habeas corpus petition was meritorious. At that juncture, instead of denying the petition, the superior court should have granted the petition and ordered the sheriff to deliver Mille to Patton forthwith.

■ Constitutional principles prohibit a defendant from being held "more than the reasonable" period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. (*Jackson, supra*, 406 U.S. at p. 738; accord, *Davis, supra*, 8 Cal.3d at p. 801.) Therefore, when the court orders a defendant committed to a state mental hospital for treatment that will promote a defendant's "speedy restoration to mental competence" (§ 1370, subd. (a)(1)(B)(i)), the court must also ensure that the defendant is actually transferred to the state hospital within a reasonable period of time.

### 4. *Mootness*

Mille is not seeking dismissal. However, the nature of the relief he is seeking has continued to evolve. The operative petition for writ of habeas corpus, filed in this court on June 26, 2009, while Mille was housed in the county jail, challenged his continued jail confinement in the face of the May 4, 2009 commitment order. In a letter to this court dated September 18, 2009, Mille "withdr[ew] his request for immediate release" because at Patton he was undergoing "appropriate examination and proper treatment, as described by Dr. Christison." Thereafter, in the traverse filed November 20, 2009, Mille requested either immediate release or commitment under alternative civil procedures, on the ground there was "no basis . . . for Dr. Christison's conclusion that [Mille's] restoration [to] competence was likely."

However, the new issues raised in the traverse are beyond the scope of this proceeding. The operative petition for writ of habeas corpus challenged Mille's prolonged confinement in the county jail. Mille having been transferred to Patton for examination and treatment, the request to this court for a writ of habeas corpus has been rendered moot.

## DISPOSITION

The order to show cause is discharged. The petition for writ of habeas corpus is denied as moot.

Kitching, J., and Aldrich, J., concurred.

A petition for a rehearing was denied March 24, 2010, and respondent's petition for review by the Supreme Court was denied May 20, 2010, S181768.