NICHOLSON, Acting P. J.,
Concurring and Dissenting. — I concur in the majority’s conclusion that the permanent injunction must be dissolved. I also concur in the majority’s conclusion that the superior court’s attempt to modify the permanent injunction after the notice of appeal was filed is void. I respectfully dissent, however, as to what is to be done on remand. In my opinion, the law does not allow the superior court to craft a new permanent injunction, but instead requires the court to decide each defendant’s petition for writ of habeas corpus on its own unique facts.
I

Due Process Rights of Defendants Found Incompetent to Stand Trial

A. Jackson
The federal Constitution protects defendants found incompetent to stand trial (1ST defendants) from being confined indefinitely. (Jackson v. Indiana (1972) 406 U.S. 715, 738-739 [32 L.Ed.2d 435, 451, 92 S.Ct. 1845] (Jackson).) The Jackson court held that, as a matter of due process, “a person charged by a *144 State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future.” (Id. at p. 738.) The court, however, cautioned: “In light of differing state facilities and procedures and a lack of evidence in this record, we do not think it appropriate for us to attempt to prescribe arbitrary time limits. We note, however, that petitioner Jackson has now been confined for three and one-half years on a record that sufficiently establishes the lack of a substantial probability that he will ever be able to participate fully in a trial.” (Id. at pp. 738-739.)
B. Davis
The California Supreme Court followed the lead of the Jackson court and held that “no person charged with a criminal offense and committed to a state hospital solely on account of his incapacity to proceed to trial may be so confined more than a reasonable period of time necessary to determine whether there is a substantial likelihood that he will recover that capacity in the foreseeable future.” (In re Davis (1973) 8 Cal.3d 798, 801 [106 Cal.Rptr. 178, 505 P.2d 1018] (Davis).) Concerning the specific defendants in Davis, the court wrote: “[Petitioners are not entitled to immediate release from confinement for they have not established, nor do they allege, either that they are now competent to stand trial or that no substantial likelihood exists that they will soon recover their competence. On the other hand, petitioners are entitled, under Jackson, to a prompt determination by state hospital authorities regarding the probability of their ultimate recovery . . . .” (Id. at p. 803.)
Applying the due process principles discussed in Jackson to California’s procedure, the Davis court directed: “With respect to future commitments, we think that in order to comply with Jackson’s demands the trial courts should henceforth direct the appropriate state hospital authorities to commence an immediate examination of the person committed and, within a reasonable time, report to the court the result of that examination and estimate the additional time probably necessary to restore the person to competence. Should the person committed desire to challenge the report’s conclusions, reasonable opportunity should be provided him to do so.” (Davis, supra, 8 Cal.3d at p. 806, fns. omitted.)
Concerning the defendants at issue in Davis, the court ordered the Department of Mental Health (now the State Department of State Hospitals) “to report without undue delay to the appropriate superior courts regarding the progress, if any, achieved by the petitioners in their respective care, and their *145 prognosis as to the future.”[1] (Davis, supra, 8 Cal.3d at p. 810.) Notably, the Davis court did not set an arbitrary deadline applicable to all defendants.
C. Mink
In 2003, the Ninth Circuit of the United States Court of Appeals decided that 1ST defendants in Oregon had a constitutional due process right to be transferred from county jail to the state hospital for treatment in a timely manner. (Oregon Advocacy Center v. Mink (9th Cir. 2003) 322 F.3d 1101, 1119-1123 (Mink).) In Mink, the federal district court found the due process rights of 1ST defendants were being violated because they were not being promptly transferred to the state hospital. It therefore imposed an injunction, applicable statewide, requiring the state hospital to admit 1ST defendants within seven days after the determination of incompetence had been made. (Id. at pp. 1107, 1122, fn. 13.) The district court based the seven-day deadline on an Oregon statute. That statute provided: “When a court determines that a defendant lacks fitness to proceed and commits the defendant to the custody of the [state hospital], the defendant shall be transported to the hospital... as soon as practicable. Transport shall be completed within seven days after the court’s determination unless doing so would jeopardize the health or safety of the defendant or others. . . .” (Or.Rev.Stat. former § 161.370(3) (1999).) Because the Legislature had chosen the seven-day time limit, the Mink court rejected the state hospital’s argument that the time limit was an abuse of discretion. (Mink, supra, at p. 1122, fn. 13.)
D. Mille
In 2010, the Court of Appeal (Div. Three of the Second Appellate Dist.) discussed the application of Penal Code section 1370 and constitutional due process in In re Mille (2010) 182 Cal.App.4th 635 [105 Cal.Rptr.3d 859] (Mille). In that case, an 1ST defendant filed a petition for writ of habeas corpus in the trial court because he had not yet been transported to the Department 30 days after he was committed under Penal Code section 1370. The court denied the petition, finding no due process violation. (182 Cal.App.4th at p. 640.) The defendant refiled the petition in the Court of Appeal, where it was denied summarily, but the Supreme Court granted review and transferred the case back to the Court of Appeal to determine whether the defendant’s due process rights had been violated even though the case had become moot because the defendant had been transported to the Department. (Id. at pp. 640-641.)
On remand, the Court of Appeal held that the deadline for transporting the defendant to the Department, consistent with due process, was subject to the *146 “basic premise” that the defendant could not be held for more than a reasonable period of time as discussed in Jackson and Davis. (Mille, supra, 182 Cal.App.4th at p. 649.) The court wrote that “[w]hat constitutes a reasonable length of time will vary with the context,” and, citing Jackson’s caution that it should not attempt to prescribe arbitrary time limits, it concluded the trial court should have ordered the sheriff to deliver the defendant to the state hospital when the defendant filed his petition for writ of habeas corpus 30 days after the commitment order. (Mille, supra, 182 Cal.App.4th at pp. 649-650.) “[T]he court must also ensure that the defendant is actually transferred to the state hospital within a reasonable period of time.” (Id. at p. 650.)
The Mille court did not cite or discuss Mink.
When the trial court in this case made its 2013 order, Mille was binding precedent. “Decisions of every division of the District Courts of Appeal are binding upon all the justice and municipal courts and upon all the superior courts of this state, and this is so whether or not the superior court is acting as a trial or appellate court. Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction.” (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)
E. Current Statutory Scheme in California
In its current form, Penal Code section 1370 gives the Department 90 days after commitment to report to the superior court on whether an 1ST defendant has regained competence or is substantially likely to regain competence in the foreseeable future. (Pen. Code, § 1370, subd. (b)(1).) The California Legislature has enacted no statute, like the one in Oregon, requiring delivery of a defendant to the Department within a specific number of days after the order of commitment.
II

The Proceedings

In 2006, the Sacramento County Superior Court imposed an “Order Granting Habeas Corpus” in the case of four 1ST defendants whose delivery to the Department for evaluations had been improperly delayed. The court held an evidentiary hearing concerning not just the status of the defendants at issue but of the circumstances of the county jails and Department, such as availability of beds and treatment options for 1ST defendants. The court’s order summarized the testimony and quoted much of Mink.
*147 In its 2006 order, the superior court found that 1ST defendants were being held in county jail for months while waiting for transportation to the Department; they received psychiatric medications in county jail but did not receive treatment toward restoring competency; under policies then in place, 1ST defendants were to be transported to Napa State Hospital (and there was no alternative); and, in some cases, the court delayed in providing the intake packet required by Penal Code section 1370. The Sacramento County Sheriff (sheriff) was not transporting these defendants to Napa State Hospital because Napa State Hospital had informed the sheriff that no beds were available.
Holding that it was “abundantly clear that the constitutional rights of felony Penal Code § 1370 committees are being violated as each day passes and they remain in the Sacramento County Jail awaiting transfer to a state hospital,” the court directed the sheriff to “deliver to Napa State Hospital all felony Penal Code § 1370 committees ordered committed to Napa State Hospital pursuant to that statute, within seven days of the order of commitment” and directed Napa State Hospital to “accept delivery of those Penal Code § 1370 committees, house them, and give them treatment . . . .”
The Department sought clarification of the order. In doing so, the Department reminded the court that (1) the court must prepare the intake packets before the defendants could be admitted to the Department and (2) the court failed to provide intake packets for some defendants months after the order of commitment. In response to the motion, the superior court changed its order. Instead of ordering transportation to Napa State Hospital within seven days after commitment, the court ordered the sheriff to deliver 1ST defendants to Napa State Hospital “within seven days of the order of commitment, unless the defendant’s intake package . . . has not been prepared, in which case the Sheriff shall deliver the defendant to the designated state hospital as soon as the package is made available.”
The Department did not appeal.
Contempt proceedings were initiated against the Department in 2013 for failure to accept 1ST defendants within the time provided in the court’s 2006 order. The Department responded by asking the superior court to dissolve the permanent injunction imposed by the 2006 order because changed circumstances had rendered the Department unable to comply with the order.
In support of its motion to dissolve the injunction and in opposition to the order to show cause, the Department submitted a request for judicial notice, including similar actions in other superior courts. In Yolo County, for example, the superior court has ordered the Department to admit 1ST defendants within 30 days after the commitment order. The Department also *148 filed declarations informing the court of increases each year in admissions of 1ST defendants while, at the same time, the number of beds did not increase. As a result of the 2006 order, defendants from Sacramento County gained preference for admission to the Department over defendants from other counties. Additionally, Sacramento County has three to five times more 1ST defendants than other Northern California counties of similar population, indicating a possible problem in court-appointed trial competency evaluations. Because of the lack of resources, the Department was unable to comply with the 2006 order.
The Department argued that the superior court could not hold the Department in contempt because it did not have the ability to comply with the order, and the Department asked the court to discharge the order to show cause. (See In re Jones (1975) 47 Cal.App.3d 879, 881 [120 Cal.Rptr. 914] [ability to comply an element of valid contempt judgment].)
The superior court ordered the Department to provide evidence that the defendants named in the contempt proceeding had been delivered to the Department. While the court did not dissolve the permanent injunction, it found that circumstances had changed, requiring a change in the injunction. It wrote:
“With regard to [the Department’s] motion to vacate [the 2006 order], the court recognizes the future needs of the Department of State Hospitals to have uniformity of accepting transferred Penal Code § 1370 committees to the state hospitals within a timely fashion, and that the seven-day deadline set forth in the [2006 order] may be unrealistic in light of the severe budget cuts suffered in a plethora of state agencies in the past few years. Nevertheless, this court remains firm in its stance that the Legislature and due process require prompt delivery of Penal Code § 1370 committees, within a reasonable period of time as noted in In re Mille (2010) 182 Cal.App.4th 635. The parties should be aware that the [2006 order] requires delivery within either seven days or immediately upon preparation of the Penal Code § 1370 intake package if not prepared within the seven-day period. There is no seven-day period allowed following preparation of the Penal Code § 1370 intake package, if it is not prepared in the initial seven-day period.
“In light of the concerns voiced by [the Department] at the hearing, the court will now modify its [2006 order] to extend the seven-day period to instead be a 14-day period, which should be sufficient to allow the Department to not only realistically meet this deadline for the Sacramento defendants committed under Penal Code § 1370, but also on a statewide basis.”
This time, the Department appealed.
*149 Despite the notice of appeal and the superior court’s resulting loss of jurisdiction over the permanent injunction, the superior court has continued to tinker with the permanent injunction, as noted in the majority opinion.
Ill

Change in Circumstances Permitting Dissolution or Modification

The majority declines to consider the legal merit of the superior court’s original injunction because (1) the Department did not appeal the order and (2) there was no change of facts or law between the 2006 order and the 2013 petition to find the Department in contempt. The former is true — there was no appeal — but the latter is not. In the superior court, the Department asserted there had been a change of facts and law, and the superior court so found, thus justifying its modification of the permanent injunction. At oral argument on appeal, the parties agreed that there had been a change of facts allowing the superior court to modify the permanent injunction.
The law allows dissolution or modification of a permanent injunction if there is a material change in the facts or law relating to the injunction or if the ends of justice would be served by dissolution or modification.[2] (Code Civ. Proc., § 533.) In justifying its own modification of the permanent injunction, the superior court found a material change of facts — that is, the fiscal shortages in the past few years have made it impossible for the Department to admit 1ST defendants within seven days after commitment.
On appeal, neither party argues that there was no material change of facts or law. That leaves the superior court’s finding that there was a material change unchallenged. Incongruously, however, the majority turns this absence of argument into a forfeiture of the issue by the Department. The logic of this position escapes me. The Department does not assert, either explicitly or implicitly, that the superior court erred by finding a change in the material facts. And there is no requirement in reason or law for the Department to raise or contest that settled issue on appeal.
In addition to the facts, the law relating to the 2006 order changed materially when Division Three of the Second Appellate District decided *150 Mille, which became precedent, binding on the superior court in this case. I explain below, regarding the merits of the 2013 order, why I believe the Mille decision represents a change in the law requiring dissolution of the 2013 order.[3]
Therefore, my view of what is in play in this appeal departs from the majority’s view. I would conclude that there was a material change in the facts and law relating to the 2006 order. Because the Department agreed with the superior court that there was a change, at least in the material facts, there was no need to spend its appellate resources in establishing that condition for dissolution or modification of the 2006 order. Consequently, the Department did not forfeit a challenge of the 2013 order, and we must determine whether the superior court abused its discretion in denying the motion to dissolve the permanent injunction.
IV

The Merits of the Permanent Injunction as Imposed in 2013

On the merits, I would find that the superior court abused its discretion in denying the motion to dissolve the permanent injunction. Neither the injunction as originally ordered in 2006 nor the modified injunction ordered in 2013 properly, or even rationally, protects the constitutional rights of 1ST defendants.
The standard for reviewing the denial of a motion to dissolve an injunction is abuse of discretion. “ ‘ “It is a rule so universally followed and so often stated as to need only to be referred to that the granting, denial, dissolving or refusing to dissolve a permanent or preliminary injunction rests in the sound discretion of the trial court upon a consideration of all the particular circumstances of each individual case” ’ and ‘will not be modified or dissolved on appeal except for an abuse of discretion.’ [Citation.]” (Salazar v. Eastin (1995) 9 Cal.4th 836, 849-850 [39 Cal.Rptr.2d 21, 890 P.2d 43].)
Applying the abuse of discretion standard, I would conclude that the permanent injunction is arbitrary and capricious because (1) it is unhinged from constitutional due process doctrine and inconsistent with precedent binding on the superior court, (2) it ignores the rights of 1ST defendants when the superior court fails to prepare the intake packet, and (3) it forces the Department to give defendants from Sacramento County, only one of 58 counties, preference when resources are limited.
*151 A. Constitutional Due Process
At the time the superior court made its 2013 order, Penal Code section 1370, subdivision (b)(1) provided: “Within 90 days of a commitment made pursuant to subdivision (a), the medical director of the state hospital or other treatment facility to which the defendant is confined shall make a written report to the court. . . .” (Stats. 2012, ch. 24, § 27.) It did not, and still does not, provide a time limit for transporting the 1ST defendant from the county jail to wherever the defendant will go for evaluation and preparation of the report to the court and for treatment to restore capacity.
Because there is no statutory right to be transported to the Department within 14 days after the superior court orders commitment, the only theoretical basis for the 2006 and 2013 orders is the constitutional right to be free of unlawful restraint on liberty, a due process right. The superior court’s 2006 order was that all 1ST defendants must be delivered to the Department within seven days after the order of commitment. The necessary conclusion is that, in 2006, the superior court believed that the constitutional due process rights of those committed were violated when they were not delivered to the Department within seven days. By 2013, those constitutional rights had changed, in the superior court’s view, because the rights would not be violated unless it took more than 14 days to deliver the defendant to the Department. The only reason the superior court gave for the change was the Department’s shortage of resources.[4]
The actual constitutional requirement on these matters is quoted in Mille: “A ‘person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future.’ ” (Mille, supra, 182 Cal.App.4th at p. 638, quoting Jackson & citing Davis, italics added by Mille.)
The “reasonable period of time” applies to the whole process to “determine whether there is a substantial probability” that the defendant will soon have capacity to stand trial. (Mille, supra, 182 Cal.App.4th at p. 638, italics omitted.) Therefore, the 2013 order was arbitrary, as proved by the court itself when it modified the 2006 order for no reason other than lack of agency resources. The 2013 order also assumes that every case is substantially the same. This is the type of uniform but arbitrary time limit rejected in Jackson, supra, 406 U.S. at page 738.
*152 The majority credits the 2006 and 2013 orders as being consistent with Mille’s holding that constitutional due process requires an 1ST defendant to be transported to the Department “within a reasonable period of time.” (Mille, supra, 182 Cal.App.4th at p. 650.) The majority concludes: “Nothing in Mille changes the law so as to classify the trial court’s refusal to dissolve the Osburn Order as an abuse of discretion.” (Maj. opn., ante, at p. 140.)
This view that the 2006 and 2013 orders are “consistent” with Mille misses the point.[5] Mille dealt with what constitutional due process requires, which is transfer to the Department and evaluation within a “ ‘reasonable period of time,’ ” a period that “will vary with the context.” (Mille, supra, 182 Cal.App.4th at p. 649, italics omitted.) In other words, constitutional due process does not prescribe a set number of days to be applied in every instance.
Reliance on Mink for a seven-day or 14-day rule is particularly irrational. In that case, the federal courts (trial and appellate) concluded, based on an Oregon statute requiring delivery of an 1ST defendant to the state hospital within seven days, that 1ST defendants in that state had a due process right to be delivered within seven days. Applying Mink here effectively bases California 1ST defendants’ due process rights on an Oregon statute. We are not bound by the decisions of the Ninth Circuit Court of Appeals, even on constitutional issues. (People v. Bradley (1969) 1 Cal.3d 80, 86 [81 Cal.Rptr. 457, 460 P.2d 129].) And in this case there are good reasons not to follow Mink, which is state specific and code specific in its analysis and remedy.
Because the 2013 order is unhinged from the requirements of constitutional due process, which is the only basis for the order, I would conclude that it is arbitrary and capricious and, thus, an abuse of discretion. Beyond the precedential dimensions of the order, however, there are additional reasons to conclude that it was an abuse of discretion.
B. Intake Packets and Impossible Burdens
While the 2013 order imposes a duty on the Department to accept an 1ST defendant within 14 days after the commitment order, there, is a gaping hole in the order that potentially allows a defendant to languish in county jail long after any reasonable period of time to transfer the defendant to the Department *153 has expired. That gaping hole is the exception that there is no duty to transfer an 1ST defendant unless the superior court gives the Department an intake packet required by Penal Code section 1370. In this case, for example, it took the superior court 42 days to deliver the packet for one of the 1ST defendants to the Department.
The 2013 order also imposes an impossible burden on the sheriff. If, outside the initial 14-day period, the court prepares an intake packet and makes it available to the Department, the sheriff is in violation of the order as soon as the Department receives the packet. The problem is that the sheriff cannot transport the 1ST defendant until the Department tells the sheriff where to transport the defendant, and the Department cannot determine where to place the defendant until the superior court provides the intake packet and the Department has a reasonable opportunity to assess the intake packet and select a facility for the 1ST defendant.
These are problems that may be susceptible to legislative resolution, applicable to all cases, but the superior court is not equipped to foresee all the eventualities and provide an all-inclusive remedy. This is evident from the superior court’s ongoing tweaking of the permanent injunction.
The judicial remedy imposed by the 2013 order and its permanent injunction is broadly applicable to Sacramento County 1ST defendants, but poorly focused. That is like prescribing aspirin to treat every illness. It may be helpful in some cases, but it may be harmful in others. In any event, it is no way to run a clinic. The problem of failure to transfer any particular 1ST defendant to the Department within a reasonable period of time should be addressed in individual petitions for writ of habeas corpus. In those proceedings, the court can consider the specific needs of the defendant and the legislative requirement that the Department report back to the superior court within 90 days after commitment, as well as any other considerations that affect the due process rights of the defendant. Such defendants are not without a remedy if the 2013 permanent injunction is dissolved.
C. Preference for Sacramento County Defendants
Finally, the order pertains only to a relatively small fraction of statewide 1ST defendants. It applies only to Sacramento County 1ST defendants.
The chief of business management for the Department said in his declaration: “Setting aside the Osburn order, as well as the [Yolo County] order, will enable [the Department] to apply a uniform triage process for the equitable admission of 1ST [defendants] referred from counties.”
A staff psychiatrist at the Department said in her declaration: “Because Sacramento has a seven-day transfer timeline for its 1ST patients, Sacramento *154 1ST patients are admitted before 1ST patients from counties without such orders and those 1ST patients from other counties must wait longer (sometimes months longer) for admission.”
There is no rational or constitutional justification for affording Sacramento County’s 1ST defendants preference over defendants from other counties. Indeed, the effect of doing so is to encourage other superior courts, like Yolo County, to impose their own arbitrary orders on the beleaguered Department. Chaos ensues.
V

Appropriate Remedy

The appropriate remedy for the general problem lies in the legislative and administrative processes of the state and its counties, not in the courts. As the experience with the superior court’s 2006 and 2013 orders has shown, any general remedy from the courts will be arbitrary and uneven.
That is not to say that the superior court is powerless to provide remedies for actual due process violations. The writ of habeas corpus is available to contest an unlawful restraint on liberty.
“Although in form the Great Writ is simply a mode of procedure, its history is inextricably intertwined with the growth of fundamental rights of personal liberty. For its function has been to provide a prompt and efficacious remedy for whatever society deems to be intolerable restraints. Its root principle is that in a civilized society, government must always be accountable to the judiciary for a man’s imprisonment: if the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release.” (Fay v. Noia (1963) 372 U.S. 391, 401-402 [9 L.Ed.2d 837, 846-847, 83 S.Ct. 822].)
Two last matters bear mentioning. First, the superior court’s permanent injunction is not a habeas corpus proceeding as to each 1ST defendant. Therefore, the only way to enforce the order is by contempt proceedings. But the Department cannot be held in contempt if it is unable to comply with the permanent injunction. (See In re Jones, supra, 47 Cal.App.3d at p. 881.) And second, in habeas corpus proceedings 1ST defendants cannot be released based on a violation of due process rights unless they establish that (1) they have been held more than the, reasonable period of time necessary to determine whether there is a substantial probability that they will attain the capacity to stand trial in the foreseeable future or (2) their continued commitment is not justified by progress toward that goal. (Davis, supra, 8 *155 Cal.3d at pp. 801, 804; Jackson, supra, 406 U.S. at p. 738.) Violation of a permanent injunction does not establish a constitutional violation requiring release.
Here, it was an abuse of discretion to do anything other than to dissolve the injunction because it imposes arbitrary deadlines under the guise of constitutional compulsion. I would dissolve the 2013 order imposing a permanent injunction and remand for individual habeas corpus proceedings.

 Hereafter, I refer to the State Department of State Hospitals as “the Department.”

 “In any action, the court may on notice modify or dissolve an injunction or temporary restraining order upon a showing that there has been a material change in the facts upon which the injunction or temporary restraining order was granted, that the law upon which the injunction or temporary restraining order was granted has changed, or that the ends of justice would be served by the modification or dissolution of the injunction or temporary restraining order.” (Code Civ. Proc., § 533.)

 While it is unnecessary to go so far, I would also conclude that the ends of justice require modifying or dissolving the permanent injunction because of the widespread, detrimental effect the injunction has had, as described below. (Code Civ. Proc., § 533.)

 The modification from seven days to 14 days raises the question, unanswered by the superior court, whether constitutional due process rights are dependent on an agency’s resources. I doubt it.

 If we were reviewing legislation requiring transfer of a defendant found incompetent to stand trial within 14 days after commitment, we would approach the question of its validity differently and would uphold it unless it was inconsistent with due process rights. That approach would be required because of the legislative powers involved. Here, on the other hand, the superior court has no such legislative powers and can impose only what the statutes and Constitution require.