Filed 4/3/15  P. v. Yanez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

|  |  |
|---|---|
| THE PEOPLE, | C075863 |
| Plaintiff, | (Super. Ct. No. CRF130575) |
| v. | |
| ALEJANDRO YANEZ, | |
| Defendant and Respondent. | |
| STATE DEPARTMENT OF STATE HOSPITALS, | |
| Objector and Appellant. | |
| [AND EIGHT OTHER CASES∗] | |

---

∗ People v. Renee Martin (Nos. 13-3738, 13-3737); People v. Agustin Campos (Nos. 13-4748, 13-2425, 12-4767, 12-3752); People v. Pierre Lumsey (No. 13-4342); People v. Peter Edwards (No. 13-4628).

1

When a criminal defendant is found mentally incompetent to stand trial (IST), the trial court orders the defendant to be delivered by the sheriff to a state hospital or other facility for treatment to restore the defendant to mental competence, or places the defendant on outpatient status. (Pen. Code, § 1370, subd. (a)(1)(B)(i).)[1]

In 2007, the Yolo County Public Defender's office (Public Defender) filed a petition for writ of habeas corpus on behalf of Peter Lawrence Hofman and Carlos Ramos, contending the sheriff had unlawfully detained petitioners at the county jail by failing to transfer them on a timely basis to a state hospital for restorative treatment after they were found IST. In 2008, the Public Defender, the Attorney General, and the State Department of State Hospitals (Department) stipulated to an order (the Hofman Order) commanding the Department to "accept any defendant in custody of the Sheriff of Yolo County ordered by the Court to be placed in a State Hospital facility, pursuant to Penal Code § 1370(a)(5), within not more than thirty (30) days of the Court's order of commitment." The Hofman Order further provided the Department could deny admission to a defendant if the necessary documents (specified in section 1370, subdivision (a)(3)) were not "taken with" the defendant to the state hospital.

In 2013, defendant Alejandro G. Yanez was charged with certain drug crimes. Thereafter, he was found IST and committed to the Department for placement in a state hospital. After Yanez had not been transferred to a state hospital within 30 days of the commitment order, the Department moved to set aside the 2008 Hofman Order, contending it could no longer comply with the order and its validity was subject to question in light of subsequent case law. The trial court denied the motion and issued an order (denying the motion to set aside) in January 2014. The Department timely appealed from this order.

---

[1] Further undesignated statutory references are to the Penal Code.

On appeal, the Department contends (1) the trial court erred in denying the motion to set aside the Hofman Order due to changes in the law and circumstances; (2) the Hofman Order undermines the Department's discretion in managing those found IST; and (3) the Hofman Order is procedurally defective.

Both the Department and the County of Yolo consider the Hofman Order to be an injunction and the Department's 2013 motion to vacate to be a motion to dissolve the injunction. We agree.

A motion to dissolve an injunction can be granted upon a showing of a material change in the facts, a change in the law, or because the interests of justice so require. (Civ. Code Proc., § 533.) We hold the trial court did not abuse its discretion in denying the motion to set aside the Hofman Order on the facts presented to it. A subsequent change in the law, however, requires reconsideration to determine whether the Hofman Order remains appropriate. The Department's remaining contentions--attacking the substance of the 2008 Hofman Order--are not reviewable because the Department stipulated to the substance of the order *and* any challenge comes years too late. We reverse and remand for reconsideration.

## BACKGROUND

*The Statutory Scheme for and the Constitutional Rights of IST Defendants*

In a related case, *People v. Brewer* (Mar. 13, 2015, C075255) __ Cal.App.4th ___ (*Brewer*), we set forth the constitutional rights of IST defendants and the statutes protecting those rights. We repeat that background here. If at any time before judgment in a criminal trial a doubt arises as to the defendant's mental competence, the court shall order a hearing into the present mental competence of defendant. (§ 1368.) If the defendant is found mentally competent, the criminal process shall resume. (§ 1370, subd. (a)(1)(A).) "If the defendant is found mentally incompetent, the trial, the hearing on the alleged violation, or the judgment shall be suspended until the person becomes mentally competent." (*Id*., subd. (a)(1)(B).)

3

"In the meantime, the court shall order that the mentally incompetent defendant be delivered by the sheriff to a state hospital," or other approved available treatment facility that "will promote the defendant's speedy restoration to mental competence." (§ 1370, subd. (a)(1)(B)(i).) Alternatively, the court may order the defendant placed on outpatient status. (*Ibid.*) Before a court makes a commitment order to a state hospital, the court shall order the community program director, or his designee, to evaluate defendant and submit to the court, within 15 judicial days, a written recommendation as to whether the defendant should be committed to a state hospital or other treatment facility or required to undergo outpatient treatment. (§ 1370, subd. (a)(2).)

The court is also required to provide a packet of documents (the 1370 packet). These documents include the commitment order, a computation of defendant's maximum term of commitment and amount of credit for time served, criminal history information, arrest reports, any court-ordered psychiatric examination or evaluation reports, the community program director's placement recommendation, records of any finding of incompetence arising out of a complaint charging a felony specified in section 290, and medical records.[2] (§ 1370, subd. (a)(3).)

Once the defendant had been admitted to a state hospital, a progress report on his restoration to competence is required. "Within 90 days of a commitment . . . , the medical director of the state hospital or other treatment facility to which the defendant is confined shall make a written report to the court and the community program director for the county or region of commitment, or a designee, concerning the defendant's progress toward recovery of mental competence." (§ 1370, subd. (b)(1).)

---

[2] The Legislature recently added medical records to the list of documents required to be included in the 1370 packet. (§ 1370, subd. (a)(3)(I); Stats. 2014, ch. 26 (Assembly Bill 1468) § 25, eff. June 20, 2014.)

In *Jackson v. Indiana* (1972) 406 U.S. 715, 738 [32 L.Ed.2d 435, 451], the United States Supreme Court held "a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant. Furthermore, even if it is determined that the defendant probably soon will be able to stand trial, his continued commitment must be justified by progress toward that goal." (Fn. omitted.)

The next year, our Supreme Court reviewed "the constitutionality of the procedures ([§ 1367 et seq.]) for the commitment to, and release from, state hospital of defendants in criminal cases who have been found to lack sufficient mental competence to stand trial." (*In re Davis* (1973) 8 Cal.3d 798, 801, fn. omitted (*Davis*).) The court concluded that petitioners' initial commitments were proper, but "acknowledge[d] that some provision must be made to assure that petitioners do not face an indefinite commitment without regard to the likelihood that they will eventually regain their competence, for such an indefinite commitment has been held to offend constitutional principles of equal protection and due process. [Citation.] Accordingly, we adopt the rule of the *Jackson* case that no person charged with a criminal offense and committed to a state hospital solely on account of his incapacity to proceed to trial may be so confined more than a reasonable period of time necessary to determine whether there is a substantial likelihood that he will recover that capacity in the foreseeable future. Unless such a showing of probable recovery is made within this period, defendant must either be released or recommitted under alternative commitment procedures." (*Ibid.*)

5

Following *Davis,* section 1370 was amended to provide for a maximum period of confinement of three years for defendants found IST. (Stats. 1974, ch. 1511, § 6, p. 3319.) Section 1370, subdivision (c)(1), provides as follows: "At the end of three years from the date of commitment or a period of commitment equal to the maximum term of imprisonment provided by law for the most serious offense charged in the information, indictment, or misdemeanor complaint, or the maximum term of imprisonment provided by law for a violation of probation or mandatory supervision, whichever is shorter, but no later than 90 days prior to the expiration of defendant's term of commitment, a defendant who has not recovered mental competence shall be returned to the committing court. The court shall notify the community program director or a designee of the return and of any resulting court orders."

In *In re Mille* (2010) 182 Cal.App.4th 635 (*Mille*), another appellate court addressed the claim that an 84-day delay in transferring an IST defendant from the county jail to the state hospital was unlawful. The court focused on the requirement in section 1370, subdivision (b)(1), that the medical director of the state hospital report to the court within 90 days of commitment on defendant's progress toward recovery of mental competence. (*Mille,* at p. 645.) "When a defendant arrives at Patton [State Hospital] on day 84 of the 90-day period, there is no meaningful opportunity for the defendant to make progress toward recovery of mental competence, let alone for the medical director of the hospital to make a written report to the court concerning such progress by the defendant." (*Ibid.*)

The court rejected the argument that defendant was receiving appropriate treatment at the jail, which was a designated treatment facility under section 1369.1 and thus able to provide antipsychotic medications. It found that providing a defendant with antipsychotic medication alone was not the equivalent of treatment in a state hospital where each patient had a treatment team of a psychiatrist, psychologist, nurse, social

6

worker, and psychiatric technician, and received both pharmacological and nonpharmacological treatment. (*Mille, supra*, 182 Cal.App.4th at p. 648.)

The *Mille* court held an IST defendant must be transferred from the county jail to a state hospital within a reasonable time, determined in the context of the 90-day reporting requirement. "Constitutional principles prohibit a defendant from being held 'more than the reasonable' period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. [Citation.] Therefore, when the court orders a defendant committed to a state mental hospital for treatment that will promote a defendant's 'speedy restoration to mental competence' (§ 1370, subd. (a)(1)(B)(i)), the court must also ensure that the defendant is actually transferred to the state hospital within a reasonable period of time." (*Mille, supra*, 182 Cal.App.4th at p. 650.)

The *Mille* court declined "to attempt to prescribe arbitrary time limits" for the transfer from the county jail to state hospital for treatment. (*Mille, supra,* 182 Cal.App.4th at p. 649; see also *id.* at pp. 649-650.) The court noted, however, that Mille filed his initial habeas petition 30 days after the order for his commitment, and the trial court denied it 49 days into the 90-day reporting period. (*Id.* at p. 649.) The court found the superior court should have granted the petition and ordered the sheriff to deliver defendant to the state hospital forthwith. (*Ibid.*) "[A] defendant needs sufficient time at the state mental hospital to be duly evaluated, potentially to derive some benefit from the prescribed treatment, and for such progress to be reported to the court." (*Id.* at p. 650.)

*The 2008 Hofman Order*

In 2007, Hofman and Ramos petitioned for a writ of habeas corpus, contending they were confined in the Yolo County jail and had been for several months. Both defendants had been found IST and the trial court had ordered them committed to Napa State Hospital (NSH). In 2008, the parties (the Public Defender, the Attorney General, and the Department) entered into the stipulated Hofman Order requiring each state

hospital under the control of the Department to accept all IST defendants from Yolo County that have been committed to a state hospital within 30 days of the commitment order. Under the Hofman Order, the Department, and any state hospital under its control, may deny admission to a defendant if that defendant's 1370 packet does not accompany him to the state hospital.

*Yanez Proceedings*

In 2013, the People charged Yanez by information with possession of a controlled substance while armed (Health & Saf. Code, § 11370.1, subd. (a)), and possession of controlled substance paraphernalia (Health & Saf. Code, § 11364.1). The court appointed a doctor to conduct a psychiatric evaluation of Yanez. The court found Yanez to be IST. On August 27, 2013, Yanez was ordered committed to the Department for placement in a state hospital. He was remanded to custody of the Yolo County Sheriff's Office for delivery to NSH.

On October 2, 2013, more than 30 days after Yanez's commitment order, the Department moved to set aside the 2008 Hofman Order. The motion was made on three legal grounds. First, the Department contended it was no longer able to comply with the 30-day deadline stipulated to in the order. Second, the Department faced equal protection claims. Because Yolo County followed the Hofman Order requiring transfer to a state hospital of those found IST within 30 days, and Sacramento County followed a similar order but with a significantly shorter (seven-day) deadline, the San Joaquin Public Defender had filed petitions for writs of habeas corpus asserting a denial of equal protection. Third, the Department questioned the validity of the Hofman Order in light of the decision in *Mille, supra,* 182 Cal.App.4th 635.

In support of its motion, the Department provided several declarations and accompanying information. Patricia Tyler, a staff psychiatrist at NSH who was responsible for administering the admission and discharge of IST patients, declared the number of IST admissions had outpaced the static bed space for such patients. She

8

provided a chart showing the number of IST admissions had increased from 1,995 in fiscal year 2010-2011 to 2,137 in fiscal year 2012-2013 (a seven percent increase). NSH had admitted 391 IST patients in 2011, 491 in 2012, and anticipated admitting 527 in 2013 (an increase of almost 35 percent). The increase in admissions had not been matched by an increase in bed availability. NSH had reduced the average length of stay from 180 days to 60 days, without any increase in "bounce back" patients. Despite these efficiencies, the wait list for NSH increased dramatically in 2013 from January (34) to August (107) and NSH could not meet the 30-day deadline of the Hofman Order.

Rob Cook, the Chief of Business Management for the Department of State Hospitals, likewise declared the number of IST admissions had increased and the Department could not guarantee a 30-day admission.

Mark Heilman, the deputy director of the Department, was responsible for overseeing the development and implementation of a pilot program to provide timely restorative care to criminal defendants declared IST. Under the program, an outside contractor would provide restorative care in the San Bernardino County jail. San Bernardino County and Riverside County had approved implementing the pilot program in their facilities. The Department has discussed providing its staff to provide restorative treatment in the Los Angeles County jail and information about the pilot program has been provided to Yolo, Sacramento, and San Joaquin Counties.

The trial court found no changed circumstances and denied the motion.[3]

The Department moved to stay the order denying its motion to set aside the Hofman Order. The Department noted it was required to respond to orders to show cause re contempt for alleged violation of the Hofman Order issued as to other IST defendants who had not been delivered to a state hospital within 30 days of the commitment order, as

---

[3] We grant the County's request to augment the record with the transcript of the hearing on the motion to set aside the Hofman Order.

well as similar contempt proceedings in other counties. The trial court denied the motion for a stay.**4**

## DISCUSSION

### I

### *Standard of Review*

We agree with the Department and the County that the Hofman Order, in directing the Department to accept all criminal defendants from Yolo County who have been found IST within 30 days of the commitment order, provided the 1370 packet is delivered with the defendant, granted injunctive relief.**5** "An injunction is statutorily defined to be 'a writ or order requiring a person to refrain from a particular act.' (Code Civ. Proc., § 525.) While the statute seems to limit that definition to prohibitory injunctions, an injunction may also be mandatory, i.e., may compel the performance of an affirmative act. [Citations.] In short, an injunction may be more completely defined as a writ or order commanding a person either to perform or to refrain from performing a particular act. [Citation.]" (*McDowell v. Watson* (1997) 59 Cal.App.4th 1155, 1160.) The Hofman Order commanded performance of a particular act within a specified time frame.

Accordingly, the Department's motion to set aside the Hofman order was a motion to dissolve the injunction. "In any action, the court may on notice modify or dissolve an injunction or temporary restraining order upon a showing that there has been a material change in the facts upon which the injunction or temporary restraining order was granted, that the law upon which the injunction or temporary restraining order was granted has changed, or that the ends of justice would be served by the modification or dissolution of the injunction or temporary restraining order." (Code Civ. Proc., § 533; accord Civ.

---

**4** We grant the respondent's motion to augment.

**5** Yanez disputes that the Hofman Order is a standing order, local rule, or injunction.

Code, § 3424, subd. (a) [grounds for modifying or dissolving "final" injunction].)  An order refusing to dissolve an injunction is an appealable order.  (Code Civ. Proc., § 904.1, subd. (a)(6).)

An order " ' "refusing to dissolve a permanent or preliminary injunction rests in the sound discretion of the trial court upon a consideration of all the particular circumstances of each individual case" ' and 'will not be modified or dissolved on appeal except for an abuse of discretion.' " (*Salazar v. Eastin* (1995) 9 Cal.4th 836, 850.)

II

*Challenges to Hofman Order*

We dispense first with the Department's two general challenges to the Hofman order.  First, it contends the Hofman order undermines the discretion vested in the Department by statute.  Second, the Department claims the order is procedurally defective because it does not permit restorative care that is county-based, it improperly inserts an admissions deadline into section 1370, and it circumvents established habeas procedures.  Because both of these contentions attack the *contents* of the Hofman Order, an order issued in *2008* after the parties *stipulated* to its contents, neither contention is reviewable on this appeal.

"It is, of course, an elementary rule of appellate procedure that a judgment or order will not be disturbed on an appeal prosecuted by a party who consented to it.  [Citations.] A stipulation such as the one at bench is a consent within the meaning of this rule. [Citation.]" (*Atchison, T. & S. F. Ry. Co. v. Hildebrand* (1965) 238 Cal.App.2d 859, 861.)  There may be an exception to this rule where the challenge is that the stipulated order is void.  (See *Adoption of Matthew B*. (1991) 232 Cal.App.3d 1239, 1267-1268 and cases cited therein.)  The Department's challenge does not fall within this exception; the Department does not contend the trial court lacked jurisdiction to issue the order or that the order exceeded the stipulation.  (*Ibid*. & fn. 16*.)*  By stipulating to the Hofman Order, the Department has forfeited any challenge to its merits.  (See *People v. Booker* (2011)

11

51 Cal.4th 141, 161 [agreement to and participation in process to excuse prospective jurors by stipulation forfeits right to complain about procedure].)

Further, the challenge comes too late. Contentions that the court erred in refusing to dissolve an injunction on grounds that could have been raised in an appeal from the original injunction are not reviewable on appeal from an order denying the motion to dissolve the injunction. (*Malatka v. Helm* (2010) 188 Cal.App.4th 1074, 1084.)[6]

III

*Grounds to Vacate Hofman Order/Dissolve Injunction*

We now address the Department's contention that the trial court erred in denying the motion to set aside the Hofman Order because there has been both a change in circumstances *and* a change in the law since the order was entered in 2008.

As set forth *ante*, Code of Civil Procedure section 533 "articulates three independent bases on which a modification of an injunction may be predicated--(1) [material] change in the facts, (2) change in the law, or (3) ends of justice." (*Luckett v. Panos* (2008) 161 Cal.App.4th 77, 85.)

A. *Change in the Facts or Circumstances*

The Department contends the change in circumstances warrants dissolution of the Hofman Order. The Department cites both the increased number of IST referrals, while the number of beds for such patients remains static, and that public defenders in other counties are raising equal protection challenges because IST defendants in those counties receive less favorable treatment than those in Yolo County, due to the Hofman Order.

---

[6] Also too late is the Department's assertion, raised for the first time at oral argument, that the language of section 1370, subdivision (b)(1) requiring a written report from the hospital "[w]ithin 90 days of a commitment made pursuant to subdivision (a)" refers to the physical delivery of the defendant to the hospital, rather than the commitment order entered by the court.

The Department presented several declarations attesting that the Department was unable to meet a 30-day deadline due to the increase in IST referrals. The supporting numbers provided, however, fail to make a compelling case. Dr. Tyler provided evidence that overall IST referrals had increased seven percent, while the average length of stay at NSH was now only a third what it previously was. There was also evidence that the Department was seeking additional resources. This evidence hardly supports the conclusion that the Department cannot meet the 30-day deadline. While there was evidence that the increase in IST referrals to NSH had increased dramatically, there was no explanation why other state hospitals could not absorb some of this increase.[7] On this showing, the trial court did not abuse its discretion in denying the motion to set aside the Hofman Order.

The Department also provided evidence about a pilot program to provide restorative treatment in county jails, and cites amendments to section 1369.1 to permit a jail to be a treatment facility. The Department failed, however, to provide any evidence that the Yolo County jail could currently provide restorative treatment. At the hearing on the motion, county counsel reported the jail was crowded and lacked space. There was a meeting set to discuss the experimental plan, but jail and medical staff were "not optimistic" that the plan would work due to the lack of facilities. The Department did not dispute this assessment of the probability of restorative treatment being provided in the near future in the Yolo County jail.

The Department contends the Hofman Order should be dissolved because it is facing lawsuits from IST defendants in other counties without such orders; these lawsuits claim a denial of equal protection. The Department argues it is "unjust to continue to require [the Department] to comply with the Superior Court's order at the risk of equal

_____

[7] Under recent amendments to section 1370, subdivision (a)(5), the Department, not the court, selects the state hospital.

13

protection claims or to engage in non-compliance with the Superior Court's order and risk contempt sanctions." The Department has not shown that any of these lawsuits have merit or that the Hofman Order does pose an equal protection problem.[8] Further, other counties are free to fashion their own orders to protect the due process rights of their IST defendants. The trial court did not abuse its discretion in declining to set aside the Hofman Order on this ground.

B. *Change in Law*

1. The *Mille* Decision

The Department contends the Hofman Order is not consistent with *Mille, supra,* 182 Cal.App.4th 635, a decision filed two years after the Hofman Order. The Department contends the 30-day deadline of the Hofman Order contradicts *Mille's* "reasonable period of time" standard. (*Id.* at p. 650.) It argues that *Mille's* timeframe is qualitative, not quantitative. *Mille* did not require a specific timeframe for every defendant and specifically declined to " 'prescribe arbitrary time limits' " for transporting an IST defendant to state hospital. (*Id.* at pp. 649-650.)

In adopting the "reasonable period of time" standard, the *Mille* court focused on the progress report that must be issued within 90 days of the order of commitment. (§ 1370, subd. (b)(1).) "For all of this to occur, a defendant needs sufficient time at the state mental hospital to be duly evaluated, potentially to derive some benefit from the prescribed treatment, and for such progress to be reported to the court." (*Mille, supra*, 182 Cal.App.4th at p. 650.) The *Mille* court held the trial court *must ensure* that the

---

[8] To the contrary, the Department has provided an opinion from the Superior Court of Contra Costa County that found compliance with court-ordered deadlines for the transfer of IST defendants does not pose an equal protection violation. We express no opinion on the issue.

defendant is actually transferred to the state hospital within a reasonable period of time for that to occur.  (*Ibid.*)

As we found in *Brewer, supra,* __ Cal.App.4th at p. __ [2015 Cal. App. Lexis 236 at pp. *25-27] with respect to a different, but similar order, we find nothing in the Hofman Order that contravenes *Mille*.  The Hofman Order in effect sets 30 days as "a reasonable period of time" to transport an IST defendant to a state hospital in time for a meaningful 90-day review to occur and thus fulfills the obligation to *ensure* timely transport.  The selection of 30 days is not contrary to *Mille*.  Rather, the *Mille* court stated--three times--that the petition for relief that was filed 30 days after the commitment order should have been granted.[9]  (*Mille, supra*, 182 Cal.App.4th at pp. 639, 649-650.) Based on *Mille*, we find requiring transport to the state hospital within 30 days--leaving 60 days for the 90-day report--was presumptively reasonable at the time the order was made.[10]

We recognize that the particular circumstances of an extraordinary case may make compliance with the 30-day deadline impossible.  The Department is not without a remedy in that situation.  Nothing in the Hofman Order prevents the Department from

---

[9]  The County requests judicial notice of the Department's petition for rehearing and the petition for review in the *Mille* case.  In both, the Department characterizes *Mille* as establishing a 30-day deadline.  We deny the request.  These statements are not binding on the Department in a subsequent case.  (4 Witkin, Cal. Procedure (5th ed. 2008) Pleadings, § 453, p. 586 [judicial admission is conclusive only in the particular case].) Moreover, the question of interpretation of case law is question of law for the court. (*Topanga & Victory Partners v. Toghia* (2002) 103 Cal.App.4th 775, 779-780 [application of statutory and case law is question of law].)

[10]  As we discuss *post*, given the change in the law that requires providing the Department with the 1370 packet *before* the IST defendant is transported and gives the Department a greater role in evaluating an IST defendant and determining appropriate placement, the trial court should consider on remand whether requiring transport within 30 days of the commitment order remains appropriate.

15

raising unusual circumstances of a particular case as a defense to an order to show cause

re contempt based on an alleged violation of the Hofman Order.[11] (See *Board of Supervisors v. McMahon* (1990) 219 Cal.App.3d 286, 306 ["Impossibility of performance is a defense to an action for contempt."].)

### 2. Assembly Bill No. 1468

In 2014, the Governor signed Assembly Bill No. 1468 (2013-2014 Reg. Sess.) June 20, 2014 (Assembly Bill 1468), an urgency measure that amended section 1370 and other statutes. (Stats. 2014, ch. 26 (Assem. Bill 1468), eff. June 20, 2014.) Assembly Bill 1468 is a lengthy budget bill relating to public safety. As pertinent to this case, the bill made changes that affect the commitment of IST defendants to a state hospital. The Legislative Counsel's Digest summarized these changes: "This bill would repeal the provision requiring the court to select the state hospital in accordance with the policies established by the [Department] when directing that the defendant be confined in a state hospital. The bill would instead require, prior to admission to the [Department], the [D]epartment to evaluate each patient committed pursuant to specified provisions of law to determine the placement of the patient to the appropriate state hospital. The bill would also require a court that orders that a defendant be committed to the [Department] or other public or private treatment facility to provide copies of any medical records with the documents described above prior to the admission of the defendant to the [D]epartment or other treatment facility where the defendant is to be committed. The bill would require the [D]epartment to utilize specified documents, including those described above and any medical records, to make the appropriate placement. The bill would make conforming changes." (Legis. Counsel's Dig., Assem. Bill 1468, Stats. 2014, ch. 26.)

---

[11] In fact, the trial court suggested the motion to vacate the Hofman Order was not the "best vehicle" for raising the Department's issues. "The better approach . . . would be to raise the issues in opposition to an Order to Show Cause re Contempt."

Assembly Bill 1468 amended Welfare and Institutions Code section 7228, which now provides: "Prior to admission, the [Department] shall evaluate each patient committed pursuant to Section 1026 or 1370 of the Penal Code to determine the placement of the patient to the appropriate state hospital. The [Department] shall utilize the documents provided pursuant to subdivision (e) of Section 1026 of the Penal Code and paragraph (2) of subdivision (b) of Section 1370 of the Penal Code to make the appropriate placement. A patient determined to be a high security risk shall be treated in the [D]epartment's most secure facilities pursuant to Section 7230. A Penal Code patient not needing this level of security shall be treated as near to the patient's community as possible if an appropriate treatment program is available."

The Department contends that Assembly Bill 1468 demonstrates the legislative intent to vest the Department with discretion in the admission of IST defendants to state hospitals, and the Hofman Order improperly infringes upon that discretion and therefore must be overturned. The County contends the "minor revision" might warrant conforming changes in the Hofman order, but argues the whole order should not be "jettisoned."

It appears to us that Assembly Bill 1468 may have a greater effect on the Hofman Order than can be cured by a "minor revision." These changes in the law may affect the reasonableness of a mandatory 30-day deadline *from the date of the commitment order* for the transfer of all IST defendants to the state hospital. The Department now has additional duties to perform before admission of a defendant to a state hospital, including selecting the most appropriate hospital or treatment facility for restorative treatment after review of the 1370 packet and other documents. Compilation of the 1370 packet may take additional time as it now must include the defendant's medical records. (§ 1370, subd. (a)(3)(I).) The trial court will need to carefully consider whether the current 30-day deadline is reasonable light of these additional duties.

17

Indeed, given the additional individualized assessment now required after the Department receives the 1370 packet, there is a question whether *any* mandatory deadline for delivery of an IST defendant to a state hospital should be triggered by the commitment order or the Department's receipt of the 1370 packet. The trial court may need to hold an evidentiary hearing to ascertain how much time is reasonable, after the 1370 packet is prepared and sent to the Department, to accommodate both the Department's duties prior to delivering IST defendants to the designated hospital or other treatment facility and the statutory requirement of a progress report from such hospital or facility within 90 days of commitment. (§ 1370, subd. (b)(1).)

A material change in the law, Assembly Bill 1468, which was not before the trial court, requires reconsideration of the Department's motion to set aside the Hofman Order. The change in the law will necessitate, at the very least, modifications to the 2008 Hofman Order. We direct the trial court to vacate its order denying the motion to set aside the Hofman Order and remand for reconsideration of that motion and further proceedings, such as an evidentiary hearing, as the trial court determines necessary or appropriate.

## DISPOSITION

The judgment (order denying motion to set aside Hofman order) is reversed.  The matter is remanded to the trial court with directions to reconsider the Department's motion to set aside the Hofman Order in light of changes to the law in Assembly Bill 1468.


                                                      \_\_\_\_\_DUARTE_____, J.


We concur:


_____RAYE_____, P. J.


_____ROBIE_____, J.

19