[No. A084596. First Dist., Div. Two. May 4, 1999.]

In re ELVIN JAMES POLK on Habeas Corpus.

**COUNSEL**

Jay B. Gaskill, Public Defender, Harold G. Friedman, Chief Assistant Public Defender, and Michael S. McCormick, Assistant Public Defender, for Petitioner.

Bill Lockyer, Attorney General, David Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Catherine Rivlin and Pamela Critchfield, Deputy Attorneys General, for Respondent.

**OPINION**

**HAERLE, Acting P. J.—**

## I. INTRODUCTION

Elvin James Polk, who is confined at Atascadero State Hospital, petitions for a writ of habeas corpus. Petitioner was committed to the state hospital pursuant to an order of commitment under Penal Code section 1370 after he was found incompetent to stand trial.[1] We issued an order to show cause why the relief requested should not be granted. Petitioner contends that his confinement is unlawful because the three-year time limit set forth in section 1370, subdivision (c)(1), has expired. Petitioner's contention raises a question of first impression regarding whether the three-year time limit applies only to the present commitment or to the aggregate of all previous commitments. We conclude that it applies to the aggregate of all commitments under the same charges, grant the petition, and remand the matter to the superior court for consideration of initiating conservatorship proceedings pursuant to section 5350 of the Welfare and Institutions Code.

---

[1]Unless otherwise indicated, all statutory references hereafter are to the Penal Code.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner was first charged in 1993 with assault with a deadly weapon, three counts of rape, one count of forcible oral copulation, false imprisonment, and enhancements for using a deadly weapon and inflicting bodily injury. He was also charged with eight prior convictions, including seven serious felonies. On November 24, 1993, the superior court suspended the criminal proceedings and instituted proceedings under section 1368 to determine whether petitioner was competent to stand trial. After appointment of experts and trial by jury, petitioner was found incompetent to stand trial on June 9, 1994. On August 8, 1994, the superior court committed petitioner to the Department of Mental Health under section 1370 for a period not to exceed three years.

On May 27, 1997, the superior court ordered petitioner returned from the state hospital after receiving a certification from the medical director that petitioner had regained his mental competence. On June 3, 1997, after petitioner had returned from the hospital, the superior court terminated the proceedings under section 1368 and reinstated the criminal proceedings. On July 25, 1997, petitioner filed a motion to dismiss the information on the ground that he had been mentally incompetent at the time of his preliminary examination. On August 8, 1997, the superior court dismissed the information pursuant to that motion, but ordered petitioner to remain in custody pending refiling of the charges by the district attorney.

On August 12, 1997, the district attorney filed the complaint again, charging petitioner with the same offenses and prior convictions. After a preliminary examination on October 3, 1997, petitioner was held to answer on those charges. An information was filed on October 16, 1997, and petitioner pleaded not guilty and denied the prior convictions.

On February 6, 1998, the superior court suspended the criminal proceedings and instituted proceedings under section 1368 to determine whether petitioner was mentally competent to stand trial. Based upon the reports of the experts it had appointed, the superior court found petitioner incompetent to stand trial at a hearing on March 31, 1998. On April 21, 1998, the superior court again committed petitioner to a state hospital for a maximum period of three years.

In a letter dated July 9, 1998, the medical director of Atascadero State Hospital requested that petitioner be returned to the court because he had reached the maximum term of confinement of three years under section 1370, subdivision (c)(1). Attached to the letter was a discharge summary

indicating that petitioner had not been restored to mental competence and recommending that he be placed on a "Murphy" conservatorship as mentally incompetent and dangerous as provided for in section 1370, subdivision (c)(2), and Welfare and Institutions Code section 5008, subdivision (h)(2). On July 27, 1998, the superior court ordered petitioner committed to a state hospital under a "Murphy" conservatorship.

On August 18, 1998, the superior court reversed itself and ordered petitioner returned to the state hospital under its commitment of April 21, 1998, for treatment to restore mental competence. At the hearing on August 18, 1998, the court expressly ruled that the three-year limitation applies to the present commitment that began on April 21, 1998, and not the aggregate of all previous commitment terms. On September 8, 1998, the superior court amended its order of July 27, 1998, to reflect that petitioner was being returned to the state hospital under the commitment of April 21, 1998.

## III. DISCUSSION

Petitioner contends that section 1370, subdivision (c)(1), must be interpreted as allowing only a three-year *total* period of confinement for treatment to restore competence to stand trial on the same charges. Section 1370, subdivision (c)(1), provides as follows: "At the end of three years from the date of commitment or a period of commitment equal to the maximum term of imprisonment provided by law for the most serious offense charged in the information, indictment, or misdemeanor complaint, whichever is shorter, a defendant who has not recovered mental competence shall be returned to the committing court. The court shall notify the community program director or a designee of the return and of any resulting court orders."

Resolution of petitioner's contention raises a question of statutory interpretation, the fundamental goal of which is to ascertain and effectuate legislative intent. "In determining intent, we look first to the words themselves. [Citations.] When the language is clear and unambiguous, there is no need for construction. [Citations.] When the language is susceptible of more than one reasonable interpretation, however, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part. [Citations.]" (*People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1007-1008 [239 Cal.Rptr. 656, 741 P.2d 154].)

The People argue that the statutory language is clear and that there is no need to look beyond the words of the statute themselves. They see no

need for reference to statutory construction based on legislative intent because, in their view, the time limit clearly refers to *each* commitment. We disagree. On its face, the statutory language is susceptible of more than one reasonable interpretation. In our view, the three-year limit could refer to the aggregate time of commitment relating to the same charges, or it could refer to each commitment after a finding of incompetence regardless of whether it relates to the same charges. Accordingly, we find it necessary to refer to extrinsic sources.

The three-year limit was added to section 1370 in 1974 when the Legislature passed Assembly Bill No. 1529, authored by Assemblyman Frank Murphy. (Parker, *California's New Scheme for the Commitment of Individuals Found Incompetent to Stand Trial* (1975) 6 Pacific L.J. 484, 489.) The purpose of the legislation was to bring the procedure for the commitment of mentally incompetent defendants in accord with the decision of the California Supreme Court in *In re Davis* (1973) 8 Cal.3d 798 [106 Cal.Rptr. 178, 505 P.2d 1018]. (Stats. 1974, ch. 1511, § 16, p. 3323.) Before 1974, a criminal defendant found mentally incompetent to stand trial in California was committed to a state hospital until he regained competence and thus faced the possibility of an indefinite commitment without regard to the crime with which he was charged or his prognosis for recovery of competence. (*Conservatorship of Hofferber* (1980) 28 Cal.3d 161, 167 [167 Cal.Rptr. 854, 616 P.2d 836].)

In *In re Davis, supra*, 8 Cal.3d 798, the California Supreme Court reviewed the law governing commitment of defendants found incompetent to stand trial pursuant to section 1367 et seq. in light of the decision by the United States Supreme Court in *Jackson v. Indiana* (1972) 406 U.S. 715 [92 S.Ct. 1845, 32 L.Ed.2d 435] (*Jackson*), which struck similar Indiana provisions on grounds that they denied equal protection and due process. In *Jackson*, a defendant found incompetent to stand trial could be committed and confined until he regained his competence, a standard not necessarily related to his need for care or treatment. Since pendency of unproved criminal charges was not a reasonable basis for distinction among mentally ill persons, Indiana law was found to deny incompetent criminal defendants equal protection. (*Jackson, supra*, 406 U.S. at pp. 729-730 [92 S.Ct. at pp. 1853-1854].) The Indiana procedures also denied due process because, solely for incompetence, they permitted confinement beyond a period reasonably related to the aims of commitment. (*Id.* at p. 738 [92 S.Ct. at p. 1858].) *Jackson* adopted a rule of reasonableness, requiring that a person charged with a criminal offense, who is committed on account of his incompetence to stand trial, may not be held more than the reasonable period of time necessary to determine whether there is a substantial probability that

competency will be restored. If there is no substantial probability the defendant will regain competence, the state must justify further confinement by showing that it is necessary on some ground applicable to all mentally ill persons. (*Ibid.*)

In *In re Davis*, the California Supreme Court found that the California procedures suffered from the same constitutional defects as those of Indiana. The court adopted the rule of *Jackson* that no person charged with a criminal offense and committed to a state hospital solely on account of his incapacity to proceed to trial may be so confined more than a reasonable period of time necessary to determine whether there is a substantial likelihood that he will recover that capacity in the foreseeable future. Unless a showing of probable recovery is made within a reasonable period, the defendant must either be released or recommitted under alternative commitment procedures. (*In re Davis, supra,* 8 Cal.3d at p. 801.)

To implement the rule, the court set out the procedure the trial court was to follow after committing a mentally incompetent defendant for treatment. The trial court was first to order a prompt evaluation and initial report concerning the defendant's mental status and the prognosis for recovery of competence, and then periodic reports regarding the defendant's progress toward recovery. (*In re Davis, supra,* 8 Cal.3d at pp. 806-807.) If the report disclosed no reasonable likelihood that the person would recover his competence to stand trial in the foreseeable future, then the court was to "either order him released from confinement or initiate appropriate alternative commitment proceedings under the Lanterman-Petris-Short Act (Welf. & Inst. Code, § 5000 et seq.)." (*Id.* at p. 807.) If the report was optimistic about the person's probable recovery, the trial court was to continue the commitment. The *Davis* court warned, however, that the ". . . trial court necessarily must exercise sound discretion in deciding whether, in a particular case, sufficient progress is being made to justify continued commitment pending trial. To guide its discretion, the trial court should consider, among other things, the nature of the offense charged, the likely penalty or range of punishment for the offense, and the length of time the person has already been confined." (*Ibid.*)

At the time *In re Davis* was decided, the Lanterman-Petris-Short (LPS) Act did not contain any specific provisions for commitment of a criminal defendant who was found incompetent to stand trial. It provided short-term commitment for a person dangerous to himself or others or long-term commitment for a gravely disabled person who was unable to feed, clothe or house himself. (*Hale* v. *Superior Court* (1975) 15 Cal.3d 221, 225 [124 Cal.Rptr. 57, 539 P.2d 817].) "To resolve this problem, and to otherwise

bring California's incompetency commitment procedure into conformity with the *Jackson-Davis* guidelines, the Legislature passed Assembly Bill No. 1529." (*Ibid.*)

Assembly Bill No. 1529 amended both the procedure for the commitment of mentally incompetent criminal defendants in the Penal Code and the scope of long-term commitments under the LPS Act in the Welfare and Institutions Code. The procedure the superior court is to follow after a criminal defendant has been found incompetent to stand trial is set forth in section 1370. (Stats. 1974, ch. 1511, § 6, pp. 3318-3320.)[2] The court is to suspend the criminal proceedings until the defendant becomes mentally competent and, in the meantime, is to commit the defendant to a state hospital or other facility for treatment for restoration to mental competence. (§ 1370, subd. (a)(1)(B).) Within 90 days of the commitment, the director of the treatment facility must make a written report to the court concerning the defendant's progress. (§ 1370, subd. (b)(1).) If the defendant has not re-gained his mental competence, but there is a substantial likelihood he will do so in the foreseeable future, he is to remain at the facility. Thereafter, at six-month intervals or until the defendant becomes mentally competent, the director of the treatment facility must continue to make written reports to the court concerning the defendant's progress. If a report indicates there is no substantial likelihood that the defendant will regain mental competence in the foreseeable future, he must be returned from the treatment facility. (*Ibid.*) If the defendant remains in a treatment facility for 18 months, the court must order him returned for a second hearing on his mental competence. (§ 1370, subd. (b)(2).) At the end of three years from the date of commitment or a period of commitment equal to the maximum term of imprisonment for the most serious charge, whichever is shorter, the defendant must be returned from the treatment facility. (§ 1370, subd. (c)(1).) When the defendant is returned following a report that there is no substantial likelihood of recovery of mental competence or following the maximum term of commitment, the court is to order conservatorship proceedings under the LPS Act. (§ 1370, subd. (c)(2).)

Assembly Bill No. 1529 created the "Murphy" conservatorship (named after the bill's author) by amending the definition of "gravely disabled" in the LPS Act to include persons who have been found mentally incompetent and are charged with a violent felony. (Welf. & Inst. Code, § 5008, subd. (h)(2); Stats. 1974, ch. 1511, § 12, p. 3322.) Under another provision of the bill, the conservator must notify the trial court, the district attorney, and

---

[2]Although section 1370 has been amended several times since 1974, none of the amendments made any substantive changes to the provisions of Assembly Bill No. 1529 at issue here.

defense counsel when the defendant recovers his mental competence; and the court in turn must order the sheriff to return the defendant immediately to the court in which the criminal charges are pending. (Welf. & Inst. Code, § 5369; Stats. 1974, ch. 1511, § 13, p. 3323.)

With this historical backdrop in mind, we turn to the question of how to interpret the three-year limit set forth in section 1370, subdivision (c)(1). Does the three-year limit refer to *each* commitment after a finding of incompetence, or to the *aggregate of all commitments* for incompetency regarding the same criminal charges? "Where a statute is theoretically capable of more than one construction we choose that which most comports with the intent of the Legislature." (*California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836].) The intent of the Legislature in enacting Assembly Bill No. 1529 was to bring California statutes into compliance with the dictates of the California Supreme Court in *In re Davis* regarding the amount of time a defendant could be committed solely for incompetency to stand trial. The statute requires six-month reports and a second hearing on competence if a defendant remains under a section 1367 commitment for eighteen months. It then dictates three years as the outside limit for commitments under section 1367. In light of the legislative intent and the statutory framework, we conclude that the most reasonable interpretation of the three-year limit is that it refers to the aggregate of all commitments on the same charges.[3]

Our conclusion is buttressed by the fact that this is the construction given the statute by the administrative agency charged with its enforcement. Though not necessarily controlling, the contemporaneous administrative construction of an enactment by those charged with its enforcement is entitled to great weight. (*People* ex rel. *Lungren* v. *Superior Court* (1996) 14 Cal.4th 294, 309 [58 Cal.Rptr.2d 855, 926 P.2d 1042].) As evidenced by the July 14, 1998, request to return petitioner to the court, the medical director of Atascadero State Hospital interprets the three-year limit as applying to all commitment in the aggregate relating to the same charges. Petitioner has also submitted a declaration by an administrator of the State Department of Mental Health stating that the staff at the department have always understood the three-year limit set forth in section 1370, subdivision (c)(1), as referring to a total time of three years of commitment on the same charges.

---

[3]Indeed, the three-year limit in section 1370 has been criticized by commentators as being longer than the "reasonable" time period specified in *Jackson, supra,* 406 U.S. at page 738 [92 S.Ct. at p. 1858]. (See Morris & Meloy, *Out of Mind? Out of Sight: The Uncivil Commitment of Permanently Incompetent Criminal Defendants* (1993) 27 U.C. Davis L.Rev. 1, 24.)

## IV. DISPOSITION

The petition for writ of habeas corpus is granted. The matter is remanded to the superior court for consideration of initiation of conservatorship proceedings pursuant to section 5350 of the Welfare and Institutions Code.

Lambden, J., and Ruvolo, J., concurred.