Filed 8/5/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| DURANTE OMAR CALLOWAY,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF CONTRA COSTA COUNTY,<br><br>        Respondent;<br><br>THE PEOPLE,<br><br>        Real Party in Interest. | A142854<br><br>(Contra Costa County Sup. Ct. Nos. 5-060823-2 and 2-288030-0) |

While facing felony charges related to a July 2005 home-invasion robbery, petitioner Durante Omar Calloway (Calloway) was found incompetent to stand trial in June 2006 pursuant to Penal Code section 1368.[1] After years of confinement under Penal Code section 1370.1—in which attempts to restore him to competency proved unsuccessful—and two one-year civil commitments authorized by section 6500 of the Welfare and Institutions Code (Section 6500), Calloway was no longer subject to confinement as of May 2011. His criminal matter (the 2005 case), however, remained pending. Thereafter, in December 2011, Calloway was charged with an additional

---

[1] All statutory references are to the Penal Code unless otherwise indicated. In accordance with section 1368, "[i]f, during the pendency of an action and prior to judgment, . . . a doubt arises in the mind of the judge as to the mental competence of the defendant, he or she shall state that doubt in the record" and shall begin a statutorily delineated process for determining the present mental competence of the defendant. (§§ 1368, 1368.1, 1369.) If a defendant is found mentally incompetent, all criminal proceedings are suspended until he or she becomes competent. (§§ 1370, subd. (a)(1)(B), 1370.1, subd. (a)(1)(B).)

1

offense (the 2011 case), and, in February 2014, a jury found him competent to stand trial in that action.

The Contra Costa District Attorney (the People) then moved to reinstate proceedings in the 2005 case based on Calloway's restoration to competence. After the trial court indicated that it would hold a jury trial on the question of Calloway's current competence pursuant to subdivision (b)(2) of section 1370.1, Calloway filed the instant writ petition challenging the trial court's authority to do so. Specifically, Calloway contends that, at this point, the issue of his competence to stand trial in the 2005 case can only be reconsidered if the trial court receives a certificate of restoration from one of the officials delineated in section 1372.

This litigation thus involves the appropriate vehicle for reconsidering a defendant's mental competence when that defendant has been released from confinement, but the underlying criminal charges have not been dismissed. We agree with Calloway that competency proceedings pursuant to subdivision (b)(2) of section 1370.1 are inappropriate at this juncture in the 2005 case. However, we further conclude that, under appropriate circumstances, the current competency of an individual in Calloway's situation may properly be tested under the authority of section 1368, itself, without the need for a certificate of restoration.

## I. BACKGROUND

On August 3, 2005, the People filed a complaint charging Calloway with multiple felonies, including: attempted murder (§§ 187, 664); assault with a firearm (§ 245, subd. (a)(2)); first degree residential robbery (§§ 211, 212.5, subd. (a)); first degree residential burglary (§§ 459, 460, subd. (a)); attempted second degree robbery (§§ 211, 212.5, subd. (c), 664); unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a)); receiving stolen property—motor vehicle (§ 496d); and criminal threats (§ 422). In addition, Calloway was charged with numerous firearm enhancements. According to the People, these crimes carry a maximum sentence of 30 years to life.

Although no trial, or even a preliminary hearing, has ever been held in the 2005 case, the People allege the following in support of the charges filed: On July 28, 2005,

2

Calloway and another individual (Stone) committed an armed home-invasion robbery, looking for money and drugs. Both Calloway and Stone used handguns during the robbery, and, at one point, Calloway fired a shot into the ceiling to impress upon the residents being robbed the seriousness of the situation. Ultimately, Calloway and Stone fled after a friend of the residents intervened. As they were leaving, Stone fired a shot, striking one of the residents. Calloway was arrested a few days later and reportedly gave a "full and frank" confession.

Once the matter proceeded to court, Calloway pled not guilty and denied all of the enhancements. His attorney, however, expressed doubt as to Calloway's competence, and thus the trial court suspended the proceedings and appointed Dr. Carolyn Beebe Walser (Dr. Walser) to evaluate Calloway pursuant to sections 1368 and 1369. In her June 2006 report to the court, Dr. Walser indicated that Calloway (then 20 years old) had extremely low intelligence and severely impaired memory. He was removed from his mother at an early age due to her drug abuse and initially placed with a foster mother who physically abused him. Thereafter, he was moved to a more successful foster placement until he was returned to his mother's care when he was approximately 12 years old. Reportedly, Calloway started using drugs at this time, spent time on the streets, and resided primarily with his girlfriend's family. His girlfriend assisted him with many of the activities of daily living, and Calloway was "significantly dependent" on her. Calloway dropped out of school, where he was a special education student, in the 10th grade. At that time, he started " 'hustling,' " selling drugs and using daily. His drugs of choice included cocaine, ecstasy, marijuana, and alcohol. As a teenager, he was in and out of juvenile hall, on charges including multiple robberies.

Dr. Walser's evaluation revealed Calloway to be in the mild mental retardation range. He showed severe impairment in abstract thinking and reasoning, visual spatial functioning, sequencing, and language. Testing specific to trial competency determined that Calloway was incompetent to assist his attorney in his own defense. Moreover, his cognitive deficits rendered him impulsive, and he reported that he "went along" with Stone who took him to the scene of the 2005 home-invasion robbery and handed him the

3

gun. Dr. Walser concluded that, not only was Calloway incompetent to stand trial, but he was also "generally incompetent to take care of himself adequately."

On June 30, 2006—after the parties agreed to submit the matter on Dr. Walser's report—the trial court found Calloway both developmentally disabled and incompetent to stand trial.[2] The matter was referred to the East Bay Regional Center, and, over 16 months later in November 2007, Calloway was admitted to the Porterville Developmental Center (the PDC) pursuant to section 1370.1, the statute which governs attempts to restore competency when a defendant is both mentally incompetent and developmentally disabled. (See §§ 1367, subd. (b), 1370.1.) In accordance with that statute, the PDC apparently made 90-day and 150-day reports to the trial court with respect to Calloway's progress towards competency. Although these reports are not included in the record, the parties agree that they indicated that Calloway remained incompetent, but did not state that he was unlikely to recover mental competence in the foreseeable future. (See § 1370.1, subd. (b)(1).) Section 1370.1 also requires that an 18-month competency hearing be held for any defendant who has been committed for 18 months and is still hospitalized. (See § 1370.1, subd. (b)(2).) However, no 18-month hearing was held in this case.

Rather, in June 2009—approximately three years after the trial court's initial finding of incompetency—the Tulare County District Attorney filed a petition seeking civil commitment of Calloway as a danger to himself or others within the meaning of section 6500.[3] On June 18, 2009, the Tulare County Superior Court granted the petition,

---

[2] A person is deemed developmentally disabled under the incompetency statutes if that person has "a disability that originates before [the] individual attains 18 years of age, continues, or can be expected to continue, indefinitely and constitutes a substantial handicap for the individual." (§1370.1, subd. (a)(1)(H).) The term includes "intellectual disability, cerebral palsy, epilepsy, and autism," as well as "handicapping conditions found to be closely related to intellectual disability or to require treatment similar to that required for individuals with an intellectual disability." (*Ibid.*) It does not encompass "other handicapping conditions that are solely physical in nature." (*Ibid.*)

[3] Section 6500 provides that a person with a developmental disability may be civilly committed to the State Department of Developmental Services for residential placement if found to be a danger to himself, herself, or others. (Welf. & Inst. Code, § 6500,

4

committing Calloway for the statutorily permitted one-year term. (See Welf. & Inst. Code, § 6500, subd. (b)(1)(A).) He remained at the PDC. The Tulare County District Attorney filed a subsequent petition with respect to Calloway in May 2010 pursuant to Section 6500. This petition was granted on May 27, 2010, extending Calloway's Section 6500 commitment through May 2011.

In the meantime, the trial court, on June 22, 2009, had ordered the PDC to submit a report regarding, among other things, the status of the Tulare County proceedings and Calloway's prospects for achieving competency. In July 2009 and September 2009 reports, PDC staff indicated that Calloway had been unable to achieve trial competency prior to the expiration of his section 1370.1 commitment in July 2009. Further, because "[h]is limited cognitive functioning may impair his ability to retain information consistently," the September 2009 PDC report concluded that it was "unlikely" that Calloway would become competent.[4] The report also indicated that Calloway had been successfully civilly committed by Tulare County as of June 2009.

In August 2010, the PDC requested that the court discontinue Calloway's competency training as he was no longer committed pursuant to section 1370.1 and, although he continued to attend the weekly classes, he had still not achieved trial competency. The trial court, without objection, ordered the discontinuance of Calloway's competency training in September 2010. In November 2010, Calloway was transferred to a community placement through the East Bay Regional Center, apparently in connection with the settlement of a civil lawsuit addressing the care, representation, and community placement of developmental center residents such as Calloway. Under this

---

subd. (b).) For purposes of this statute, an individual is deemed to be dangerous to self or others if found incompetent to stand trial after having been charged with certain enumerated offenses, including, as is relevant for our purposes, robbery perpetrated by a person armed with a dangerous or deadly weapon or first degree residential burglary. (*Id.*, subd. (a).)

[4] Calloway was "returned to the committing court" on September 18, 2009, in connection with the reports on his mental competence issued by the PDC. (See § 1370.1, subds. (b)(1) & (c).)

new placement, a caseworker was reportedly assigned to live with Calloway for eight hours each day in a local apartment. As mentioned above, Calloway's civil commitment pursuant to Section 6500 subsequently expired in May 2011. It was not renewed.

Thereafter, in December 2011, Calloway was charged with several offenses related to illegal possession of a firearm based on the October 28, 2011, discovery of a loaded gun in the vehicle in which he was riding with his caseworker. Calloway was picked up on a warrant with respect to these charges and placed in custody in September 2012. After his attorney expressed doubt as to his trial competency, proceedings in this 2011 case were suspended and Calloway was referred for evaluation as to his present competency. Subsequently, three different mental health professionals, including Dr. Walser, opined that Calloway was incompetent to stand trial in connection with the 2011 case. In fact, at the February 2014 competency trial, Dr. Walser testified that Calloway was in the bottom one percent of the population in terms of memory and could not grasp abstract concepts or formulate falsehoods. Both she and another doctor indicated that Calloway suffered from a condition that grew neither worse nor better with time. Dr. Walser felt " 'very strongly' " that Calloway was incompetent. Nevertheless—after reviewing Calloway's videotaped confession in the 2005 case and hearing testimony from the 2005 investigating officer and Calloway's floor deputy at the local jail—a jury found Calloway competent to stand trial in the 2011 case.[5]

After the finding of competency was made in the 2011 case, the court set a trial date in the 2005 case. In response, Calloway filed a March 2014 motion to vacate the trial date and dismiss the 2005 case in furtherance of justice and in accordance with his federal and state speedy trial rights. (See §§ 1370.1, subds. (c) & (d), 1385; see U.S. Const., 6th Amend.; Cal. Const., art. I, § 15.) The People opposed Calloway's motion and submitted their own pleading in April 2014, requesting that criminal proceedings with respect to the 2005 case be formally reinstated based on the jury's recent competency verdict in the 2011 case. Calloway countered that the court was without

---

[5] These charges, however, were dismissed soon thereafter in May 2014.

jurisdiction to reinstate criminal proceedings in the 2005 case by motion of the prosecution. At a hearing on May 7, 2014, the trial court concluded that it would set a date for a jury trial on Calloway's current competency in the 2005 case, subject to Calloway's right to file a motion challenging its authority to do so.[6]

Thereafter, on June 4, 2014, Calloway filed a motion to vacate the jury trial date and obtain his release from custody. Specifically, Calloway argued that the only way to bring the issue of his competency back before the trial court in the 2005 case was through receipt by that court of a certificate of restoration issued by a designated official in accordance with section 1372.[7] Since no such certificate had been issued in the case, Calloway maintained that further proceedings regarding his current mental competence were not authorized. Calloway additionally asserted that, should the trial court reject his argument and hold a hearing with respect to his restoration of competency, there was no right to a jury trial in such a proceeding. Finally, Calloway claimed that he should be released from custody because he was no longer subject to confinement under the incompetency statutes. The People, in contrast, maintained that the court could now hold

---

[6] The court also rejected the People's argument that the jury's finding of competency in the 2011 case should be given collateral estoppel effect in the 2005 case, thereby obviating the need for an independent determination of competency in this matter. The People have not challenged this conclusion and we do not consider it here.

[7] Section 1372 provides in relevant part that "[i]f the medical director of the state hospital or other facility to which the defendant is committed, or the community program director, county mental health director, or regional center director providing outpatient services, determines that the defendant has regained mental competence, the director shall immediately certify that fact to the court by filing a certificate of restoration with the court by certified mail, return receipt requested." (§ 1372, subd. (a)(1).) In addition, according to the statute, "[i]f the defendant becomes mentally competent after a conservatorship has been established pursuant to the applicable provisions of the Lanterman-Petris-Short Act, Part 1 (commencing with Section 5000) of Division 5 of the Welfare and Institutions Code [hereafter LPS Act], and Section 1370, the conservator shall certify that fact to the sheriff and district attorney of the county in which the defendant's case is pending, defendant's attorney of record, and the committing court." (§ 1372, subd. (b).)

the 18-month competency hearing that was never completed in the 2005 case in order to determine Calloway's current competency in the matter.

On July 2, 2014, after several hearings, the trial court concluded that—under the plain language of section 1370, subdivision (b)(2)—the People were entitled to an 18-month hearing on Calloway's current competence to stand trial in the 2005 case. Further, pursuant to that statute, such a hearing is held in accordance with section 1369, and thus a jury trial was permitted.[8] In reaching this conclusion, however, the trial court indicated its dissatisfaction with the existing statutory structure, stating: "To me, it is confusing and unclear the state of the statute. And both counsel have done briefings and supplemental briefings to shed any light either on reported decisions, unreported decisions, or statutory legislative histories. And nothing, in my view, sheds any light on the current circumstances that we're in." Indeed, after issuing its decision, the court acknowledged that Calloway's counsel would likely be testing the correctness of its ruling at the appellate level and indicated its agreement with that course of action, asserting: "Well, I'd be happy for the [appellate court] to shed some light on what they think the procedures are. I couldn't really figure it out."

Thereafter, Calloway did file a writ petition in this court on September 4, 2014, arguing that use of the 18-month review procedure authorized by section 1370.1, subdivision (b)(2), to test his present competency was inappropriate and that, in any event, a jury trial on the matter would be improper. After requesting and receiving opposition, we summarily denied the petition on November 20, 2014. Calloway then filed a petition for review, which was granted by the Supreme Court on January 21, 2015. In its order, the Supreme Court transferred the matter back to this court with directions to vacate our earlier order and issue a new order directing the superior court to show cause

---

[8] Although the court referenced subdivision (b)(2) of section *1370*, it appears to have meant section 1370.1, as that is the applicable statute in the present proceedings and subdivision (b)(2) of that statute contains the provision related to 18-month competency hearings. (See § 1370.1, subd. (b)(2).) Essentially identical language is contained in section 1370, subdivision (b)(4).

8

why the relief sought in Calloway's writ petition should not be granted. We did so on January 27, 2015, and thus now reach the merits of Calloway's claims.[9]

## II. DISCUSSION

### A. *The Incompetency Statutes*

A defendant is incompetent to stand trial if, "as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." (§ 1367, subd. (a).) Trial of an incompetent defendant violates both state and federal due process guarantees. (*People v. Smith* (2003) 110 Cal.App.4th 492, 499; see U.S. Const., 14th Amend.; Cal. Const., art. I, § 15.) Thus, "[a] person cannot be tried or adjudged to punishment . . . while that person is mentally incompetent." (§ 1367, subd. (a).)

Rather, as mentioned above, pursuant to section 1368, whenever, during the pendency of a criminal proceeding and prior to judgment, "a doubt arises in the mind of the judge as to the mental competence of the defendant," the court shall inquire of defense counsel as to the status of the defendant. (§ 1368, subd. (a).) If defense counsel believes that the defendant may be incompetent, the court "shall order" a hearing to determine the defendant's competency. (*Id.*, subd. (b).) Even if defense counsel believes the defendant to be competent, however, the trial court still has the discretion to order a competency hearing. (*Ibid.*)

---

[9] Given the length of time Calloway has already been confined in connection with this matter; the possibility that he could be inappropriately subjected to both a jury trial on his present competency and a criminal trial on the underlying charges before review on appeal becomes available; the discrete nature of the question presented, which is unlikely to be addressed or corrected during a competency hearing or criminal trial; and the lack of published decisional guidance available on this important issue, we conclude (as the Supreme Court at least implicitly determined) that Calloway has no plain, speedy, or adequate remedy by appeal in this case. (See *People v. Mickle* (1991) 54 Cal.3d 140, 180 [competency verdict is interlocutory and appealable only from a final judgment in the underlying criminal proceeding]; *Hogya v. Superior Court* (1977) 75 Cal.App.3d 122, 128-129 [listing nonexclusive factors to be considered in determining propriety of writ relief].) Thus, writ review is appropriate.

Once the question of a defendant's competency is set for hearing, all proceedings in the criminal matter are generally suspended until competency is determined. (§§ 1368, subd. (c), 1368.1.) In accordance with section 1369, such a competency determination is made either by the trial court or by a jury after the court appoints appropriate experts to examine the defendant with respect to his or her mental competence. (§ 1369, subd. (a).) In addition, if it is suspected that the defendant is developmentally disabled, the trial court must also appoint a representative of the local regional center to evaluate the defendant. (*Ibid.*)

At any competency hearing held pursuant to section 1369, "[i]t shall be presumed that the defendant is mentally competent unless it is proved by a preponderance of the evidence that the defendant is mentally incompetent." (§ 1369, subd. (f).) If the defendant is found competent, criminal proceedings are resumed. (§§ 1370, subd. (a)(1)(A), 1370.1, subd. (a)(1)(A).) If, however, the defendant is found incompetent, criminal proceedings remain suspended until the defendant regains competency, and the defendant is sent for evaluation and treatment. (§§ 1370, subd. (a)(1)(B), 1370, subd. (a)(1)(B).)

Where, as here, a criminal defendant is found to be both mentally incompetent and developmentally disabled, that defendant is committed for treatment designed to promote restoration of his or her competency in accordance with the detailed series of statutory requirements set forth in sections 1370.1.[10] These provisions were put in place to implement the California Supreme Court's decision in *In re Davis* (1973) 8 Cal.3d 798 (*Davis*), which in turn was a response to the holding of the United States Supreme Court in *Jackson v. Indiana* (1972) 406 U.S. 715 (*Jackson*). (See *In re Polk* (1999) 71 Cal.App.4th 1230, 1235-1238 (*Polk*); *In re Newmann* (1976) 65 Cal.App.3d 57, 61-65.) In short, both *Davis* and *Jackson* stand for the proposition that—in order to avoid offending constitutional principles of equal protection and due process—"no person

---

[10] A similar—but not identical—statute, section 1370, applies generally when a person charged with a felony is found mentally incompetent. (§ 1367, subd. (b).) Throughout this analysis, we will reference both statutory schemes where relevant.

charged with a criminal offense and committed to a state hospital solely on account of his incapacity to proceed to trial may be so confined more than a reasonable period of time necessary to determine whether there is a substantial likelihood that he will recover that capacity in the foreseeable future." (*Davis*, *supra,* 8 Cal.3d at p. 801.) "Unless such a showing of probable recovery is made within this period, [a] defendant must either be released or recommitted under alternative commitment procedures." (*Ibid.*)

In order to avoid the indefinite confinement of incompetent defendants condemned by both *Jackson* and *Davis*, the trial court—pursuant to section 1370.1—must first request and consider the placement recommendation made by a representative of the regional center after evaluation of a defendant found incompetent to stand trial. (§ 1370.1, subds. (a)(1)(B)(i) & (a)(2).) Next, "[w]ithin 90 days of admission of a person committed pursuant to subdivision (a) [of section 1370.1]," a designated representative of the facility to which the defendant is committed must make a report to the trial court and the regional center representative "regarding the defendant's progress toward becoming mentally competent." (§ 1370.1, subd. (b)(1).) If this report discloses a "substantial likelihood the defendant will become mentally competent within the next 90 days," the trial court may continue the defendant's commitment for that additional period of time. (*Ibid.*) A similar report describing the defendant's progress toward becoming mentally competent must be made within 150 days of admission. (*Ibid.*)

In addition to these 90-day and 150-day reports, section 1370.1 details a number of different ways in which the issue of a defendant's competency can be brought back before the trial court. For instance, "[u]pon becoming competent, the court shall order that the defendant be returned to the committing court pursuant to the procedures set forth in paragraph (2) of subdivision (a) of Section 1372 or by another person designated by the court." (§ 1370.1, subd. (a)(1)(C) (subdivision (a)(1)(C)).) Moreover, if a 90-day or 150-day report indicates that "there is no substantial likelihood that the defendant has become mentally competent, the committing court shall order the defendant to be returned to the court" so that civil commitment proceedings may be considered for the

defendant.[11]  (*Id.,* subd. (b)(1).)  Further, "[a] defendant who has been committed or has been on outpatient status for 18 months, and is still hospitalized or on outpatient status, shall be returned to the committing court" for another competency hearing pursuant to section 1369.  (§ 1370.1, subd. (b)(2).)  In addition, "[i]f it is determined by the court that no treatment for the defendant's mental impairment is being conducted, the defendant shall be returned to the committing court."  (*Id.*, subd. (b)(3).)

Finally, no commitment to promote restoration of competency pursuant to section 1370.1 can last for longer than three years.  (§ 1370.1, subd. (c)(1).)  Thus, "[a]t the end of three years from the date of commitment or a period of commitment equal to the maximum term of imprisonment provided by law for the most serious offense charged in the information, indictment, or misdemeanor complaint, or the maximum term of imprisonment provided by law for a violation of probation or mandatory supervision, whichever is shorter, a defendant who has not become mentally competent shall be returned to the committing court."  (*Id.*, subd. (c)(1)(A).)  At this point, the trial court considers whether the defendant may be subject to commitment under the LPS Act or pursuant to Section 6500.  If these civil commitment provisions are found inapplicable, however, the defendant "shall not be subject to further confinement pursuant to [the incompetency statutes] and the criminal action remains subject to dismissal pursuant to Section 1385."[12]  (§ 1370.1, subd. (c)(2)(A); see *id*., subd. (d).)

---

[11] This provision is grammatically inconsistent and makes no sense as drafted.  The parallel provision in section 1370 provides, in contrast, that "[i]f the report indicates that there is no substantial likelihood that the defendant *will regain mental competence in the foreseeable future*, the committing court shall order the defendant to be returned to the court" so that civil commitment proceedings may be considered for the defendant.  (§1370, subd. (b)(1)(A), italics added.)  It seems likely that the intent behind both provisions was the same, and thus section 1370.1, subdivision (b)(1) should be construed to read similarly to section 1370, subdivision (b)(1)(A).

[12] Again, the statute is not a model of clarity.  It notes that a defendant may be subject to civil commitment under the LPS Act or pursuant to Section 6500 "in the event of dismissal of the criminal charges before the defendant becomes mentally competent."  (§ 1370.1, subd. (c)(2)(A).)  It further provides that if a defendant is found not to be subject to civil commitment under the referenced statutes, "the individual shall not be

Section 1385 permits the trial judge to order an action dismissed "in furtherance of justice." (§ 1385, subd. (a).) It may be invoked upon the court's own motion or upon application by the prosecuting attorney. (*Ibid.*) Thus, the incompetency statutes clearly contemplate the situation faced here by Calloway. Although no longer subject to confinement as set forth in section 1370.1, subdivision (c)(2)(A), his criminal charges in the 2005 case remain pending, albeit subject to potential dismissal "in furtherance of justice" pursuant to section 1385.

**B.**    *Restoration Issues in this Case*

Unfortunately, while the incompetency statutes manifestly allow for individuals to be released from confinement while their underlying criminal matters remain pending, they fail to provide clear direction as to how such individuals can properly be returned to the committing court for further proceedings with respect to their competency. The trial court in this case—at the urging of the People—concluded that it could test Calloway's current competency by holding an 18-month hearing pursuant to section 1370.1, subdivision (b)(2). We agree with Calloway, however, that an 18-month competency hearing could not properly be held at this point in his 2005 case.[13]

First, pursuant to the plain language of section 1370.1, subdivision (b)(2), such an 18-month hearing is only appropriate when a defendant "who has been committed or has

---

subject to further confinement pursuant to [the incompetency statutes] and the criminal action remains subject to dismissal pursuant to Section 1385." (*Ibid.*) And, it states generally that a defendant's criminal charges are not required to be dismissed if a defendant has not been restored to competency within the applicable timeframe. (§ 1370.1, subd. (d) ["the criminal action remains subject to dismissal pursuant to Section 1385"].) The statute, however, is silent as to the availability of civil commitment for a defendant whose criminal charges have not been dismissed. Presumably, even if criminal charges have not been dismissed, civil commitment can be pursued at the end of the statutory confinement period. Indeed, section 1372, subdivision (f), expressly contemplates that a civil commitment can be in place while criminal charges remain pending. (See § 1370, subds. (c), (d), & (e) [more clearly indicating the availability of civil commitment under the LPS Act while the underlying criminal charges "remain[ ] subject to dismissal"].)

[13] These issues of statutory interpretation are, of course, subject to our de novo review. (*Duarte v. State Teachers' Retirement System* (2014) 232 Cal.App.4th 370, 384.)

13

been on outpatient status for 18 months . . . is *still hospitalized or on outpatient status.*"
(§ 1370.1, subd. (b)(2), italics added; see § 1370, subd. (b)(4).) Since, in the present case, Calloway has been released from all confinement under the incompetency statutes, this provision is patently inapplicable to his situation. More fundamentally, the 18-month hearing appears to be one of the many safeguards built into the incompetency statutes to promote the prompt resolution of issues related to a defendant's trial competency, thereby avoiding commitments deemed unreasonably long under *Jackson* and *Davis*. (See Parker, *California's New Scheme for the Commitment of Individuals Found Incompetent to Stand Trial* (1975) 6 Pacific L.J. 484, 495-496 (Parker) [characterizing the 18-month hearing as a provision put in place to ensure that due process does not require release from confinement under the incompetency statutes prior to the expiration of the maximum period of commitment].) Thus, once a defendant has reached his or her maximum period of commitment under the incompetency statutes, the justification for holding the 18-month hearing disappears. Under these circumstances—while we assume that there is some leeway in the scheduling of such an 18-month hearing on or around the date 18 months from a defendant's initial commitment—it seems clear that such a hearing should be held, in any event, at some point prior to the expiration of the defendant's maximum period of confinement.

In contrast, pursuant to section 1370.1, subdivision (c)(1)(A), once a defendant reaches the end of his or her maximum commitment period, that defendant is "returned to the committing court" for further proceedings. Similarly, as happened in this case, a defendant must be returned to the committing court for proceedings pursuant to section 1370.1, subdivision (c)(2), if a 90-day or 150-day report concludes that there is no "substantial likelihood" that the defendant will regain mental competence. (§1370.1, subd. (b)(1); see § 1370, subd. (b)(1)(A); see also footnote 11, *ante*.) Under both of these circumstances, there is no specific requirement that another competency hearing be held. (§1370.1, subd. (c).) Rather, at this point, the trial court considers the civil commitment options available for the defendant. (*Ibid.*) And, any defendant not civilly committed must be released from confinement. (*Ibid.*) Since the September 2009 PDC report in this

14

case concluded that it was "unlikely" Calloway would become competent, his maximum period of commitment came to an end, and thus holding an 18-month hearing to test his current competency is no longer a viable option. We will therefore grant Calloway's petition and issue a writ prohibiting the trial court from holding an 18-month competency hearing in this case.

However, we find Calloway's reliance on section 1372 to be similarly misplaced. As stated above, that statute provides for the issuance by certain designated individuals of a "certificate of restoration" to inform the committing court when a defendant has regained mental competency. (§ 1372, subds. (a)(1) & (B).) Pursuant to section 1372, there are essentially three types of individuals that are required to certify to a defendant's recovery of mental competence. First, "the medical director of the state hospital or other facility *to which the defendant is committed*" must "immediately" file such a certificate with the trial court upon a defendant's restoration of competence. (*Id.*, subd. (a)(1), italics added.) Second, a similar requirement is placed on any "community program director, county mental health director, or regional center director *providing outpatient services*." (*Ibid.*, italics added) Finally, a certificate must also be completed by a conservator "[i]f the defendant becomes mentally competent after a conservatorship has been established" pursuant to the LPS Act and section 1370. (§ 1372, subd. (b).)[14] Once received, the certificate of restoration is not definitive on the issue of competency. Rather, the trial court may hold a hearing—albeit without a jury—on the issue of whether the certificate should be approved. (§ 1372, subds. (c) & (d); see *People v. Murrell* (1987) 196 Cal.App.3d 822, 826-827 (*Murrell*) [hearing under section 1372 is a special proceeding for which there is no statutory right to a jury]; see *People v. Mixon* (1990) 225 Cal.App.3d 1471, 1480 (*Mixon*).)

---

[14] There is no reference in this provision to section 1370.1 or the civil commitments authorized by Section 6500 that are contemplated by 1370.1, subdivision (c)(2)(A). This would seem to be an error in drafting, given the parallel purposes of sections 1370 and 1370.1. Thus, presumably, section 1372, subdivision (b), would be interpreted to authorize the filing of restoration certificates pursuant to 1370.1 as well as 1370.

Calloway argues that, given his current situation, the issue of his competency can only be revisited if the trial court receives a certificate of restoration as set forth in section 1372. However, interpreting section 1372 in the context of the incompetency statutes as a whole, it seems clear that certificates of restoration must only be generated by the individuals set forth in that provision when a defendant is receiving either inpatient or outpatient services pursuant to an actual incompetency commitment or when a defendant has been civilly committed in the wake of an incompetency commitment. (See *Mixon*, *supra*, 225 Cal.App.3d at p. 1485 [" '[t]he certification is the opinion of the medical professionals who observed and treated the defendant *while he was committed*' "], italics added.) This makes sense as trial competency is a very specific skill and, absent a current incompetency commitment, or subsequent civil commitment based on a prior finding of incompetency, the individuals designated in section 1372 would be unlikely to monitor any progress made by a defendant towards restoration of trial competency. Of course, here, Calloway is not civilly committed and is no longer receiving competency training of any kind. Thus, were we to espouse the position adopted by Calloway, there would be no individual able to certify his current competence and no procedure for bringing that issue back before the trial court. We doubt the Legislature could have intended such a anomalous result. (See *Mixon*, *supra*, 225 Cal.App.3d at p. 1481 [section 1372 is "part of 'a comprehensive scheme for dealing with criminal defendants whose mental competency is suspect;' " a statute must be construed with reference to the entire statutory scheme and should be given a construction " 'consistent with sound common sense and wise policy, with a view to promoting justice' "].)

What, then, is the appropriate vehicle for reconsidering a defendant's mental competence when that defendant has been released from confinement, but the underlying criminal charges have not been dismissed? In our opinion, the answer to this question lies in the plain language of section 1368, itself. As set forth above, pursuant to that statute, "[i]f, during the pendency of an action and prior to judgment, . . . a doubt arises in the mind of the judge *as to the mental competence of the defendant*, he or she shall state that doubt in the record" and shall begin a statutorily delineated process for determining

16

the present mental competence of the defendant. (§1368, italics added; see also §§ 1368.1, 1369.) Admittedly, this statute is most often used when a judge, previously assuming a defendant to be competent, begins to doubt that competence. However, we believe the language is broad enough to also apply when a judge, operating under a previous finding of incompetency, begins to doubt that a defendant remains incompetent. In both situations, a doubt arises in the judge's mind "as to the mental competence of the defendant." Read this way, section 1368 is essentially a tool through which the trial court can determine a defendant's current mental status when it appears that existing presumptions with respect to that status are no longer accurate.

Our interpretation of section 1368 is buttressed by the legislative purpose underlying the incompetency statutes—to promptly determine a defendant's trial competency, thereby avoiding commitments deemed unreasonably long under *Jackson* and *Davis.* (See *Polk*, *supra*, 71 Cal.App.4th at pp. 1235-1238; see *id.* at p. 1234 [fundamental goal of statutory interpretation is to ascertain and effectuate legislative intent].) While a defendant's interest in avoiding indefinite commitment is manifest, the state also has an interest in bringing to trial an individual who has been accused of a criminal offense with a minimum of delay. (See *People v. Superior Court* (*McPeters*) (1985) 169 Cal.App.3d 796, 798 (*McPeters*); see also Parker, *supra*, at p. 493.) Moreover, all of the parties, including the court, have an equal interest in an accurate adjudication of a defendant's competency. (*McPeters*, *supra*, 169 Cal.App.3d at p. 798 ["[n]either justice nor due process of law is served if defendant is erroneously found to be incompetent to stand trial when, in fact, he is competent"].)

Thus, as described in detail above, the incompetency statutes are replete with provisions for the prompt treatment and repeated evaluation of an incompetent defendant. (See, e.g., § 1368, subd. (a) [hearing on competency whenever doubt arise in mind of judge "as to the mental competence of the defendant"]; § 1370.1, subd. (a)(1)(B)(i) [incompetency commitment at a facility designed to "promote the defendant's speedy attainment of mental competence"]; § 1370, subd. (a)(1)(B)(i) [same]; § 1370.1, subd. (b)(1) [periodic reports to court on progress towards competency]; §1370,

17

subd. (b)(1) [same]; § 1370.1, subd. (b)(1) [return to court if no substantial likelihood of regaining competency]; § 1370, subd. (b)(1)(A) [same, within 10 days]; § 1370.1, subd. (b)(2) [18-month hearing on competency]; § 1370, subd. (b)(4) [same]; § 1370.1, subd. (b)(3) [return to court if no treatment being provided]; § 1370, subd. (b)(5) [same]; § 1370.1, subd. (c)(1)(A) [return to court upon maximum period of commitment]; § 1370, subd. (c)(1) [same]; § 1372, subds. (c) & (d) [hearing on restoration of competence].) In addition, once it is believed that competency has been restored, a defendant must be returned to the committing court without delay. (See § 1372, subd. (a)(1) [once a defendant is restored to competence, designated official must "immediately" certify that fact to the committing court]; *id.*, subd. (a)(3)(A) [sheriff must "immediately" return the restored defendant to the court for further proceedings]; *id.*, subd. (a)(3)(C) [in "all cases" restored defendant must be returned to court within 10 days of the filing of the certificate of restoration].) Indeed, given this plethora of procedural protections—which essentially require the constant monitoring of a defendant's trial competency whenever that defendant is confined for purposes of incompetency treatment—it seems unlikely that a trial court would ever need to re-invoke section 1368 to determine a defendant's current competency while that defendant is subject to an active incompetency commitment.

However, a trial court abuses its discretion if it fails to hold a competency hearing under section 1368 *whenever a defendant* presents substantial evidence of his present incompetence. (*Murrell*, *supra*, 196 Cal.App.3d at p. 825; see also *People v. Stankewitz* (1982) 32 Cal.3d 80, 91-93.) In this context, it has been held that the testimony of one mental health professional that a defendant is currently incompetent is sufficient to warrant a competency hearing. (*Murrell*, *supra*, 196 Cal.App.3d at p. 826.) Thus, section 1368 may be invoked multiple times in a single proceeding, so long as a defendant presents substantially new evidence or changed circumstances. (*Id.* at p. 827; see, e.g., *People v. Reynolds* (2011) 196 Cal.App.4th 801, 805 (*Reynolds*); *Polk*, *supra*, 71 Cal.App.4th at p. 390.)

For instance, in *Murrell*, the defendant was found mentally incompetent and developmentally disabled by a jury and was therefore committed in June 1984 to a state

18

hospital for treatment to restore competency. (*Murrell*, *supra*, 196 Cal.App.3d at p. 825.) In August 1984, the state hospital certified that the defendant had been restored to competency and two, three-day hearings were subsequently held challenging the certificate of restoration under section 1372. (*Ibid.*) During the second of these hearings, two additional experts were appointed to evaluate the defendant. At the conclusion of both hearings, the trial court found the defendant competent. (*Ibid.*) The defendant then requested a jury trial on the issue of competency under section 1368, arguing that he had presented psychiatric testimony of his current incompetency at the section 1372 hearing sufficient to trigger a new jury trial under that statute. (*Id.* at pp. 825, 827.) The trial court rejected this argument, and the court of appeal affirmed, stating: "The trial court was obligated to reinitiate section 1368 proceedings only if defendant presented substantially new evidence or changed circumstances. [Citations.] As the evidence presented by defendant in support of his demand for a second jury trial was the same as the evidence found by the trial court to be insufficient to prove defendant's incompetence at the hearing on the certification of competence, the trial court did not err in refusing defendant's demand for a jury trial." (*Id.* at p. 827.)

Given this right of a criminal defendant to call upon section 1368 multiple times in the same proceeding, it only makes sense that the trial judge should also be able to re-invoke section 1368 if it has before it substantial new evidence or changed circumstances creating a doubt as to the validity of its prior determination of incompetency. Indeed, the trial court has the discretion to order such a competency hearing under that statute regardless of the defense's position on current competency. (§ 1368, subd. (b).) Of course, if the attorney for the defendant informs the court that the defendant remains incompetent, the defendant would have an absolute right to a competency hearing before any underlying criminal proceedings could resume. (*Ibid.*)

We therefore conclude that Calloway's writ petition has merit and that the trial court may not properly hold an 18-month competency hearing in this case. However, the trial court may hold a competency hearing pursuant to sections 1368 and 1369 on its own motion and without the need of a certificate of restoration if there is new evidence and/or

changed circumstances before it on remand sufficient to raise a doubt in the mind of the trial judge that Calloway—previously found incompetent in the 2005 case—might now be competent. In this regard, we note that a jury recently found Calloway competent in an unrelated case. Moreover, although the appellate record is unclear on this point, it appears that Calloway may have been living on his own without incident or supervision from October 30, 2011, until he was picked up on the warrant in the 2011 case in September 2012. On the other hand, in February 2014, two experts testified in the 2011 case that Calloway was incompetent and that his condition was unlikely to change.

Should the trial court determine that a new section 1368 hearing is warranted based on the evidence before it, both Calloway and the People have the right to demand a jury trial on the issue of Calloway's present competency. (§ 1369; see *McPeters*, *supra*, 169 Cal.App.3d at p. 798 [construing section 1369 as a general grant of a right to a jury trial "to all proper parties to the special proceeding," including the prosecution].) Further, during any such competency hearing, it shall be presumed—pursuant to subdivision (f) of section 1369—that Calloway is competent unless it is proved by a preponderance of the evidence that he is mentally incompetent. (Compare *People v. Rells* (2000) 22 Cal.4th 860, 862 [at a hearing on a defendant's recovery of mental competence pursuant to section 1372, presumption is that defendant is competent, despite prior finding of incompetency]; see also *id.* at pp. 866-867 [noting that the presumption of competence applies at an 18-month review hearing held pursuant to 1370, subd. (b)(2), in spite of the fact that it is inconsistent with the defendant's apparent nonrecovery of mental competence].)

If a hearing is held and Calloway is found competent, the criminal process in the 2005 case shall resume. (§ 1370.1, subd. (a)(1)(A).) If, in contrast, it is determined that Calloway remains incompetent in the 2005 case, we note that the three-year limit on confinement under the incompetency statutes applies to the aggregate of all commitments for incompetency regarding the same criminal charges. (*Polk*, *supra*, 71 Cal.App.4th at p. 1238; see *People v. G.H.* (2014) 230 Cal.App.4th 1548, 1558-1559; *Reynolds, supra,* 196 Cal.App.4th at p. 806.) Thus, the trial court must consider a defendant's prior

20

commitment on the same charges when calculating any subsequent commitment for incompetency. (See *Reynolds*, *supra*, 196 Cal.App.4th at pp. 807-809.) Since, in this case, it was determined by the PDC in September 2009 that it was "unlikely" that Calloway would become competent, his maximum period of confinement with respect to the 2005 charges has come to an end and no further period of commitment with respect to those charges is warranted.

Thus, should it be determined that Calloway remains incompetent in the 2005 case—or should the trial court conclude that the evidence of Calloway's current competence is insufficient to trigger a new competency hearing—the court is left with the possibility, pursuant to section 1370.1, subdivision (c), of pursuing additional civil commitment for Calloway. For instance, Calloway may be subject to commitment under Section 6500 if the People can prove he is currently dangerous. (See *In re O.P.* (2012) 207 Cal.App.4th 924, 933-935; see *Conservatorship of Hofferber* (1980) 28 Cal.3d 161, 174-178.)[15] Or, given that Dr. Wasler has previously concluded that Calloway is "generally incompetent to take care of himself," he may be subject to commitment under the LPS Act as unable to provide for his basic personal needs for food, clothing, or shelter. (Welf. & Inst. Code, § 5008(h)(1)(A).) However, if civil commitment is not an option, Calloway must be released from further confinement, and the underlying criminal charges remain subject to dismissal pursuant to section 1385. (§ 1370.1, subds. (c)(2)(A) & (d).)

---

[15] In this regard, we note that a petition under 6500 may be filed "in the superior court of the county that determined the question of mental competence of the defendant." (Welf. & Inst. Code, § 6502.) Filing such a petition in the same county as the committing court would allow for better oversight of the annual renewal process.

21

## III. DISPOSITION

Let a peremptory writ of prohibition issue directing the Superior Court of Contra Costa County to vacate its order authorizing an 18-month competency hearing in this case and to proceed in a manner consistent with the views expressed herein.

_____
REARDON, P. J.

We concur:

_____
RIVERA, J.

_____
STREETER, J.

Trial Court:                    Contra Costa Superior Court


Trial Judge:                    Hon. Barry Baskin


Counsel for Petitioner and      Elizabeth K. Barker
Appellant:                      Assistant Public Defender
                                Garrick Byers
                                Special Assignment Attorney
                                Contra Costa County Alternative Defender's Office


Counsel for Respondents:        William Kuimelis
                                Deputy Attorney General
                                Office of the Attorney General


*Calloway v. Superior Court* A142854